Charles F. BROESCHE et ux., Appellants,

v.

STATE of Texas et al., Appellees.

No. 13686.

Court of Civil Appeals of Texas.

Houston.

June 29, 1961.

Rehearing Denied Sept. 7, 1961.

Frank O. Barnes, Herman Gaskamp, Houston, for appellants.

Joe Resweber, County Atty., Alvin K. James, Asst. County Atty., Houston, for appellees.

WERLEIN, Justice.

This is a condemnation suit instituted by the State of Texas and Harris County to condemn appellants' two lots and corrugated metal warehouse thereon, for a public highway known as the Southwest Freeway in Houston, Harris County, Texas. Judgment was entered for appellants on the jury verdict for $6,500.

Appellants in their first Point assert that the court erred in requiring appellant, Mr. Broesche, to testify as to the purchase price of the lots. After said appellant had testified that in his opinion the value of the property was $8,700 to $10,000, on January 26, 1959, the date of the taking by the State, he was asked on cross-examination and required to state over his counsel's objection, what the two lots cost when purchased by him in June, 1955. He testified that he paid $2,000 for them, or $1,000 per lot. He also testified that the corrugated metal warehouse which he built in September, 1955, on the back part of one of the lots was of 20 by 50 feet dimensions and of the value of $2,400. He used the warehouse for storage of materials and equipment.

There was testimony both from said appellant and appellees' witness, H. F. Finley, who were the only witnesses, that the value of property in that area had increased considerably during the 3½ years between the date of purchase by appellants and the date of condemnation. Appellees' witness, Finley, testified that in his opinion the increase was 12% per year. By subtracting the highest value placed upon the warehouse by either witness, from the total amount awarded appellants, it is evident that the jury found the value of the lots to be approximately twice the amount appellant paid for them. Appellant testified that he was a building contractor and that he bought lots all the time for the purpose of building houses on them. There is nothing to show that the lots in question were not bought at their reasonable market value. Indeed, appellant testified he figured $1,000 per lot was a reasonable price.

It is the general rule that when a parcel of land is taken by eminent domain, it is competent as evidence of its value, to show the price at which it was bought, if the sale was a voluntary one, and not so remote in time as to have no bearing upon the question of the value of the property at the time it is condemned. 18 Am.Jur., p. 994, Eminent Domain, § 351; 29 C.J.S. Eminent Domain § 273 p. 1267. We think the foregoing rule is supported by the weight of authority and that it is generally followed in Texas.

In Continental Development Corporation v. State, Tex.Civ.App., Fort Worth 1960, 337 S.W.2d 371, the court held that it was not error to elicit on cross-examination from the owner's officer who had previously testified as to the value of the property at the time it was taken, the amount paid per acre for the tract some four years before the state's "taking" of such property. The court stated that the monetary inflation which occurred between 1954 and 1959 is a matter of common knowledge. In the instant case, the increase in value of the lots was fully developed by both parties and was a proper matter for the consideration of the jury.

The Dallas Court of Civil Appeals in Couch v. Gulf, Colorado & Santa Fe Ry. Co., 1956, 292 S.W.2d 901, writ ref., n. r. e., held admissible the cost of land purchased some two years and two months prior to the date of the taking. The court stated that even if it were to hold the evidence improper, it would not furnish a basis for a reversal of the judgment under the evidence. The jury found the value of the land on February 18, 1955 to be $3,000 per acre or three times the amount paid for it in December, 1952.

In Reeves v. City of Dallas, Tex.Civ. App., 195 S.W.2d 575, writ ref., n. r. e., the court held that it was proper to admit on cross-examination evidence of the purchase price paid for property by the condemnee in 1939, some five years before the date of the taking.

In support of the general rule that prior sales are admissible in determining the value of property unless they are so remote in time as to have no bearing upon the question of present value, see also Hall v. City of West Des Moines, 245 Iowa 458, 62 N.W.2d 734; Gulf Refining Company v. Davis, 224 Miss. 464, 80 So.2d 467; Southern Electric Generating Co. v. Leibacher, 269 Ala. 9, 110 So.2d 308.

We know of no Texas case that has held a period of as little as 3½ years intervening between the date of purchase and date of condemnation as being too remote. In Scott v. McLennan County, 306 S.W.2d 943, writ ref., n. r. e., the Waco Court of Civil Appeals held that the interval of time between the purchase of the property by appellant in 1945, 1947 and 1949 and the date of condemnation, July 18, 1956, was too long. In such case the purchase of the property was made some seven, nine and eleven years prior to the date of the taking, and was therefore too remote. The same court, in Thompson v. State, Tex.Civ.App. 1958, 319 S.W.2d 368, no writ history, held that the purchase of the property in 1950 was too remote to have probative value in arriving at the reasonable market value of the property in 1958.

■ On the question of remoteness, much is left to the discretion of the trial court. As stated by Chief Justice Pleasants of the Galveston Court of Civil Appeals, in City of Houston v. Pillot, 73 S.W.2d 585, 591, reversed on other grounds, 105 S.W.2d 870:

"The questions of the degree of similarity and nearness of time and distance necessary in cases of this kind, to render testimony of sales of other property admissible in evidence, is not predetermined by any inflexible, hard and fast general rule, but must rest largely in the discretion of the judge, and the rules vary with the facts of the cases. Lewis on Eminent Domain, vol. 2 (2nd Ed.) § 443. In support of his text the author just mentioned cites

cases in which the difference in time was from three or four to eight years, and the distance of the lands from each other was from half a mile to six miles. This general rule, that these questions are largely left to the discretion of the court, is also announced in 22 C.J. § 855. See also 17 Texas Jurisprudence, § 160."

See also Thornton v. City of Birmingham, 250 Ala. 651, 35 So.2d 545, 546, 7 A.L.R.2d 773; State v. Childress, Tex.Civ.App., 331 S.W.2d 230, ref., n. r. e.

■■ In the instant case appellant was asked on cross-examination what he paid for the lots. He had previously testified as to the value of the property and that he had checked on values and sales of similar property in the general area. We do not think that the trial judge abused his discretion in overruling appellants' objection and thereby in effect holding that the date of purchase was not too remote to have some bearing on the value of the property at the time of the taking. It is evident that the jury placed a value on the lots of at least twice what they cost three and one-half years before the taking, and awarded for the property an amount considerably in excess of the value placed thereon by Mr. Finley, a member of the Houston Board of Realtors, who had had years of experience in appraising property. The amount found by the jury is also slightly in excess of what the Commissioners had awarded, and is much in excess of the original cost of the lots plus an annual 12% increase in the value thereof and plus the cost of the warehouse. If the trial court did, however, abuse his discretion in admitting the testimony, we cannot say that such error was calculated to cause and probably did cause the rendition of an improper judgment in the case. Rules 434 and 503, Texas Rules of Civil Procedure.

Appellants next complain that the court erred in admitting testimony concerning restrictions on the property for residential use only and in refusing to instruct the jury

to consider the use being made of the property at the time of the taking.

Both appellant and Mr. Finley testified without objection that the lots were in a subdivision restricted for residential use. Appellant, however, testified to the effect that the restrictions had been waived as to the lots on Dineen Street, where the lots in question are located, and that appellants had the guarantee, more or less, of the Civic Club of that area that they would not contest the building by appellants of any type of building on that street. The whole matter of the restrictions and appellants' contention that they were waived was before the jury. Moreover, appellant testified fully in regard to the lots being used for commercial purposes and that the commercial use of the property was the highest and best use to which it could be put. The court excluded testimony of the value of residential lots in the addition because such lots were unimproved and the subject property was improved. There was testimony, however, of the value of nearby lots for commercial use.

The court in its charge to the jury defined "market value" as follows:

"You are instructed that the term 'market value' is the price which the property would bring when it is offered for sale by one who desires to sell, but is not obligated to sell, and is bought by one who desires to buy it, but is under no necessity of buying it, taking into consideration all the uses to which it is reasonably adaptable and for which it either is or in all reasonable probability will become available within the reasonable future."

We think that the court adequately charged the jury in its definition of "market value" that it could take into consideration all the uses for which the property was adaptable and for which it either was or in all reasonable probability would become available within the reasonable future. It

is our view that there was no error in the court refusing to go further and instruct the jury to consider the use being made of the property, since the jury was authorized to consider such use in the instruction given by the court in defining market value. City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808.

We do not agree with appellants that the case should be reversed because of jury misconduct. Juror Mrs. Vick testified in effect that she put a valuation of $2,000 on the improvements and $2,250 on each lot, a total of $6,500 for the property, though her first vote was for $5,590 the value placed upon the property by the State's witness, and which she thought was a fair price and gave appellants a good profit. There is nothing to show that Mrs. Vick discussed or mentioned any matters that were not in evidence or that she indulged in any inferences or conclusions not warranted by the evidence.

The court in its charge gave the following instruction:

"You are instructed that ordinarily improvements have no market value separate from the land and when considered in arriving at the amount of compensation to be paid to a landowner, improvements can only be considered to the extent that they add to, increase, or enhance the value of the land."

Juror Chandler testified that he took such instruction to mean that the jury was to consider the land only. He testified that he didn't give any credit for the warehouse, and that the $6,500 he allowed was for the two lots. He said the reason why he did not consider the value of the warehouse was his assumption that it was not to be considered unless it enhanced the value of the property. He further testified that after considering the improvements he decided they did not enhance the value of the property, and that is the reason why he didn't include in the amount he found any damages for the building.

 Both appellant and appellees' witness testified as to the value of the improvements and also as to the value of the property as a whole. We think the court properly instructed the jury that in arriving at the amount of compensation to be paid, the improvements could only be considered to the extent that they added to, increased or enhanced the value of the land. Lower Nueces River Water Supply District v. Sellers, Tex.Civ.App. 1959, 323 S.W.2d 324, writ ref., n. r. e.

 Mr. Chandler's testimony indicates that he did not misunderstand the instruction of the court, and that he undertook to follow such instruction in considering whether the building did enhance the value of the land. If he did, however, misunderstand the instruction, the court would not be authorized to set aside the jury verdict simply because of his misinterpretation of the evidence or the charge of the court. The law is well settled that a trial court is authorized to set aside a jury verdict which is the result of a unanimous mistake in the nature of a clerical error, but not when the verdict results from a misinterpretation of the evidence or the charge of the court. Adams v. Houston Lighting & Power Company, 158 Tex. 551, 314 S.W.2d 826; Caylat v. Houston East & West Texas R. Co., 113 Tex. 131, 252 S.W. 478.

 We cannot say that the mention by one or more of the jurors of the profit Mr. Broesche was making or the mention of his income taxes probably resulted in harm to appellants. Such matters were within the common knowledge and experience of the jury and the mention thereof does not constitute reversible error. The matter of profit was a natural incident to the increase in the value of the property from the date of purchase to the date of condemnation, and both witnesses had testified as to the increase in values. If juror Chandler was in fact influenced in arriving at his value of $6,500 for the two lots as a result of considering the profit Broesche

was making, we cannot say that such consideration probably resulted in injury to appellants since the amount of $6,500 which he says he allowed for the land only, is in excess of the $6,000 minimum placed upon the naked lots by appellant. Rule 327, T.R.C.P.; Holt v. City of San Marcos, Tex. Civ.App., 288 S.W.2d 802, writ ref., n. r. e.

The judgment of the trial court is affirmed.