**COUNTY OF BEXAR, Appellant,**

v.

**Earl COOPER and wife, Gladys Cooper, Appellees.**

No. 13836.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 22, 1961.

Supplemental Opinion Nov. 29, 1961.

C. J. Matthews, San Antonio, for appellant.

Park Street, James K. Gardner, San Antonio, for appellee.

BARROW, Justice.

This is a condemnation suit by Bexar County against Earl Cooper and wife to condemn for highway purposes, a strip of land eighty-six feet wide and some 2,300 feet long, consisting of 4.629 acres out of a tract of land containing 168 acres. The case was tried to the jury which returned a verdict, finding (1) that the market value of the land condemned was $16,500.00; (2) that the value of the remainder of the land immediately before the taking was $515,000.00, and (3) that the value of the remainder immediately after the taking was $476,500.00. Based upon the verdict, the trial court rendered judgment in favor of appellees for $16,500.00, the value of the land taken, plus the sum of $38,500.00, the severance damage to the remainder.

Appellant predicates this appeal upon two principal contentions: (1) That the judgment should be reversed on account of improper argument of appellees' counsel to the jury; and (2) that the verdict of the jury is greatly excessive and against the great weight of the evidence.

■ Appellant's first contention is overruled. The complaint as to the argument of appellees' counsel was not preserved in the proper way; that is, by bill of exceptions. Pritchett v. Highway Insurance Underwriters, 158 Tex. 116, 309 S.W.2d 46.

■ We sustain appellant's second contention. The 168-acre tract involved herein lies along the west side of Fredericksburg Road, some two miles north of Loop 410 in Bexar County, Texas. It has a frontage on said road of about 1600 feet. There are approximately 90 acres of land in almost a rectangular shape next to the highway. The balance of the tract is triangular or wedge shape, extending westward to the point of the wedge. In the extreme northeast corner of the tract there is a live-oak grove. Appellees' improvements, consisting of a large two-story home, which has been described as "beautiful", together with barns, stables and other improvements, are all located in this grove. The grove occupies a small area and is the high point of the entire tract. From this live-oak hill the remainder of the land slopes toward the west and southwest. Except for the live-oak grove, the land is all brushy country, predominantly mesquite. The strip of land condemned enters the tract about 300 feet west of the northeast corner, to the rear of all the improvements, and extends in a southwesterly direction through the pasture land. The strip does not take or interfere with any of appellees' improvements these improvements were valued by the witnesses from $50,000.00 to $60,000.00.

Appellees presented five expert witnesses. Roland Reinhardt testified that the value of the part taken was $36,000.00; that the value of the remainder before the taking was $530,000.00, and after taking $467,000.00; severance damages $63,000.00. Mrs. Cecile Burke testified that the value of the part taken was $35,000.00; the value of the remainder before taking was $525,000.00, and after taking, $465,000.00; severance damages $60,000.00. Fred Green testified that the value of the part taken was $34,425.00; the value of the remainder before taking $535,000.00, and after taking $475,425.00; severance damages $59,575.00. Gilbert Kinder did not value the land taken, but testified the value of the remainder before taking was $550,000.00, and severance damages amounted to $102,000.00. Bert Fry testified that the value of the part taken was $31,500.00, the value before taking $525,000.00, value after taking was $467,078.00, resulting in a severance damage of $57,922.00. Mrs. Burke testified that the highest and best use of the subject land was for estate purposes; the other four witnesses, that it was for subdivision purposes.

The appellant presented one expert witness, George French, who valued the land

taken at $9,200.00, and the remainder before taking at $400,022.00, and after taking at $441,479.00. This witness also testified to numerous recent comparable sales of land in the immediate vicinity of the subject land, giving the names of persons involved, the dates of the sales, the acreage, and the volume and pages of the record of the deeds. These sales ranged from $1,000.00 to $1,700.00, and from $1,750.00 to $2,000.00 per acre. The tracts sold ranged from twenty to one hundred and seventy-five acres in size. On the other hand, appellees' witnesses testified that they knew of no comparable sales. They did not in any way dispute these actual sales, either the fact that they were made or that the land was comparable. They simply ignored this testimony.

Considering the evidence as a whole, we find that appellees' expert witnesses in testifying to the values placed by them, simply gave expression to their own opinion, and their opinions are not supported by any information upon which to evaluate them. The testimony amounts to no more than a mere conclusion. While it is well settled that the opinions of expert witnesses are admissible in evidence, yet in considering the value of these opinions, they fall within the criticism of Judge Norvell in Tennessee Gas & Transmission Co. v. Zirjacks, Tex.Civ.App., 244 S.W.2d 837, 838: "One claiming damages to land must show the nature of the damage, the effect upon various portions of the tract and the relationship of the same to market value. A mere conclusion as to market value is insufficient for this purpose." When we analyze the testimony, we find that appellees' witnesses have valued the remainder of the tract, including all improvements, at from $3,000.-00 to $3,200.00 per acre, and at the same time they value the strip of brush land taken, which had no improvements, at from $7,000.00 to near $8,000.00 per acre. Thus valuing this strip through the pasture land at more than double the remainder of the tract with all the improvements, and almost

four times the price comparable land sells for in the vicinity, according to the undisputed evidence. In addition thereto, we find that in valuing the remainder of the land after the taking, they merely fixed an arbitrary amount which they considered to be severance damages, and subtracted that figure from the value before taking, and thus arrived at the value after the taking. The reason assigned by some of the witnesses for this severance damage is because the strip taken runs diagonally across the land, consequently, in subdividing the tract the streets would necessarily be shorter and result in increasing the cost of paving and installing utilities. We agree that might be true to some extent, as to the ninety acres of land through which the strip extends, but we fail to see how it could possibly be true of the wedge shaped triangle which lies entirely to the west of the strip. The witnesses also stated that there would be some loss of land. It would be difficult to find a tract of land lying in such shape, and with such dimensions as this tract, that there would not be some loss in subdividing it into blocks, lots, streets and alleys.

On the other hand, we find the highest price involved in any comparable sale in the immediate vicinity was $2,000.00 per acre. The opinion of the witness French is in line with this value. He testified that the market value of appellees' land with improvements was from $2,000.00 to $2,500.00 per acre. The value he placed on this tract, including improvements, was slightly less than $2,500.00 per acre. It is clear that the improvements were not taken or damaged, and that the damage was only to the unimproved land.

In determining the market value of land condemned, or damaged thereby, actual sales of similar or comparable lands in the immediate vicinity of that being condemned, where willing sellers and willing buyers are involved, are much more reliable than the opinions of experts. Robards v. State, Tex.Civ.App., 285 S.W.2d 247.

Where no error has been assigned which would require a remand of the case, it becomes our duty to require a remittitur. Adams v. Houston Lighting & Power Co., 158 Tex. 551, 314 S.W.2d 826; Carter v. Texarkana Bus Co., 156 Tex. 285, 295 S.W. 2d 653. The evidence in this case shows that a market value in excess of $2,000.00 per acre, for the 4.629 acres of land actually taken, is not justified. Therefore, the jury verdict, finding such value to be $16,500.00 is excessive in the sum of $7,242.00.

Considering the severance damage, we refer to the testimony of the witness who attempted to explain the extensive amount claimed by appellees. This witness testified that, although the strip taken now has a paved road thereon 24 feet wide, it would be necessary to pave two streets, one on each side of this road, because, he says, that homes are not built on a thoroughfare. He valued the land which would be used for these streets at $36,800.00. He figured the cost of paving these streets to be $18,800.00. Thus there would be three paved streets side by side, and he said there would be seven other streets approximately perpendicular to these streets running in each direction, and that in order to put in north and south fronts the streets would have to be curved, and this would result in the loss of an additional ten acres of land, which he valued at an additional $30,000.00. He then said that utility, water and sewerage lines, running across these parallel streets would be an additional expense, and finally came up with the astounding figure of $102,000.00. No proposed subdivision of the land has been prepared, and so far as this record shows none is presently contemplated. However, we have considered this evidence along with the map of appellees' land. We can see no reason for two streets parallel and adjacent to the new road. The seven streets can lead out from this road in each direction, and by laying them out at a very slight angle, rather than perpendicular to the road, these streets can run directly east and west, and the homes can have north and south fronts on each side thereof, and none of them would front on this thoroughfare, but it would be used as a way to and from the subdivision. Thus, all of this detailed cost could be eliminated, except that there might be some loss of land on each end of these streets. Under this record we can conceive of no other severance damages. We are of the opinion that a willing seller and a willing buyer would be little impressed with appellees' severance damages as above outlined. We are of the opinion that the amount of severance damages allowed by the jury should be reduced to $26,000.00, and that such amount will be ample to cover any loss of land caused by the condemnation, plus any other incidental damages that might exist.

The judgment of the trial court is reversed and the cause remanded, unless the appellees file with the Clerk of this Court a written remittitur in the sum of $19,742.00. In the event appellees file such remittitur within ten days the judgment as remitted is affirmed.

### Supplemental Opinion

Appellees having filed in writing the remittitur as suggested in our original opinion, it is ordered that the judgment, as reduced by the remittitur, be in all things affirmed.