J. L. C. McFADDIN et al., Appellants,

v.

The STATE of Texas, Appellee.

No. 6633.

Court of Civil Appeals of Texas.

Beaumont.

Oct. 10, 1963.

Rehearing Denied Nov. 13, 1963.

Marcus & Weller, Beaumont, for appellants.

W. G. Walley, Jr., Beaumont, for appellee.

STEPHENSON, Justice.

This is an action in eminent domain brought by the State of Texas to condemn approximately 30 acres of land for the widening of an existing highway. Judgment was rendered upon a jury verdict and the landowner appealed.

Four separate suits were instituted, but consolidated by agreement. The tracts of land are adjacent and front on the highway. Each of the tracts condemned was 138 feet in depth and out of a larger tract. The landowners sought no damage to the remainder of their land, and the judgment represented only the value of the land taken.

Appellants contend first it was error for the trial court to permit witnesses to place a value on the tract of land as a whole, and then place the same value of the part taken as a pro rata part of the entire tracts. Appellants contend the 138 front feet taken must be valued as a severed tract and not just as a part of the whole. The Tex. Comm. of App. case of State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, and 89 S.W. 979 on rehearing, is cited as authority for this proposition. A careful reading of this case indicates the contrary. The Carpenter case, supra, was one involving both the element of value of the land taken, and the element of damage to the remainder. The case was reversed and remanded for trial because of the possibility that the jury awarded the landowner double damages. The Court said:

"Perhaps if the value of the strip of land taken had been the only issue submitted, it would have been proper to submit the question of its value, considered as a part of the whole tract. However, it seems to us obvious that when the value of this strip was ascertained 'as a part of the entire tract of which it forms a part,' this necessarily included to some extent a part of the damages to the remaining portion. * * * there would be opportunity for double damages.

"* * * In order, therefore, to avoid the possibility of double damages, the value of the part taken should be ascertained by considering such portion alone, and not as a part of a larger tract; unless, of course the issue of damages to the remainder of the tract is not involved."

There was no error on the part of the trial court in permitting the witnesses to place a value upon the entire tract even though there was only a partial taking in this case involving only the value of the land taken, and not involving the issue of damage to the remainder. No evidence was admitted to show any benefit, or enhancement of value, to the remainder. The form of issues submitted to the jury were in conformity with the suggestion in the Carpenter case, supra, and no complaint is made as to the issues.

Appellants contend the Court erred in permitting the State's witness, Avant, to appraise the property taken for a use which was not the highest and best use, and on a wholesale basis rather than a retail basis. On voir dire examination this witness testified in response to a question as to the highest and best use, as follows:

"It would be, in my opinion, either industrial property or residential sub-

division. Possibly industrial property would be the best use.

"MR. WELLER: That would be its highest and best use. A comparison, then, with industrial property—with residential property, or property suitable for residential wouldn't be a fair comparable, would it?.

"A. Yes, sir; inasmuch as either use would be applicable to this property, and by and large, for acreage—acreage property, in these circumstances, you will find that the market runs pretty close to the same thing, either way.

"MR. WELLER: Then none of the comparables you have used are residential property?

"A. Some of them are. I feel they are comparable."

The witness was then permitted by the court to testify as to comparable sales of land which appellant asserts were sold for residential purposes.

Even though this court should conclude the witness Avant testified the highest and best use of this property was industrial, which is doubtful, it was not error for the trial court to permit the witness to testify to the comparables given. Such action would not have been an abuse of discretion on the part of the judge. The rule is as stated in Broesche v. State, Tex.Civ. App., 348 S.W.2d 770:

" 'The questions of the degree of similarity and nearness of time and distance necessary in cases of this kind, to render testimony of sales of other property admissible in evidence, is not predetermined by any inflexible, hard and fast general rule, but must rest largely in the discretion of the judge, and the rules vary with the facts of the cases.' "

Appellants cite City of Tyler v. Ginn, Tex. Civ.App., 225 S.W.2d 997, to support their contention. The trial court in the Ginn case limited the testimony to showing the value of the property taken, for residential purposes only. The trial court in the present case took no such action, and there is ample testimony in the record showing the value of this land for both residential and industrial purposes. The rule as to whether the property should be considered as a whole, or in lots was set forth in Minyard v. Texas Power & Light Co., 271 S.W.2d 957:

"Where there is no occasion to consider the property by parcels it should be and is properly considered in the aggregate and not considered as divided into lots particularly where such is tentative or speculative or prospective, and where there has been no actual division."

The same propositions of law are applicable to the testimony of the State's witness, Speigle. The points are overruled.

The jury found the value of each parcel of land taken to be $3,000.00 per acre and judgment was entered based upon such value. Appellants complain of such findings on the grounds that they are supported by "no evidence" and also "against the great weight and preponderance of the evidence". The first point is a question of law to be tested on appeal by considering only the evidence favorable to the verdict and disregarding all other evidence. The witness Morehead testified in his opinion the value of the land taken was $2,300.00 per acre. The witness Avant placed such value at $2,-250.00. The witness Speigel set the value at $2,000.00 per acre. Each of these witnesses testified as to many comparables. The findings of the jury and the judgment of the court were supported by this evidence. In passing upon the question of "against the great weight and preponderance of the evidence", this court considered all of the evidence in the record, both favorable and unfavorable to the findings of the jury and the judgment of the court.

J. L. C. McFaddin, owner of a part of the land taken, placed the value at $5,000.00 per acre. The witness Brown set the value at $4,200.00 per acre, and the witnesses Hall, Lefler and Brimbow set the value at $4,000.00 per acre. From the voluminous record in this case, it is apparent that the jury had before it a full and complete picture of the land in question, its location, kind and character. The jury had the benefit of the prices paid for numerous tracts of comparable land. It was the province of the jury, from the evidence as a whole, to find the value of the land in accordance with the court's charge. They valued the land well within the range between the highest and lowest estimate of the expert witnesses, and well within the range between the highest and lowest sales prices of comparable land, as shown by the record. These contentions must be overruled.

■ The judgment of the trial court contains the following:

"That the Defendants do have and recover of and from the Plaintiff, the State of Texas, herein, the sum of Eighty-nine Thousand Nine Hundred Two and 50/100 ($89,902.50) Dollars, according to their respective interests as shown, hereinabove, together with interest thereon from the 1st day of June, 1961, until such time as Plaintiff, the State of Texas, deposits into the registry of this Court the sum of Eighty-nine Thousand Nine Hundred Two and 50/100 ($89,902.50) Dollars, together with all interest accrued thereon at the rate of Six (6%) per cent per annum, such sum together with all interest thereon from June 1, 1961, being payable to the order of the Defendants, according to their respective interests as hereinabove shown."

Appellants contend the amount of the judgment should show interest until the time the deposit is made and until it could be withdrawn without prejudice to their right of appeal. In this case, the State of Texas made no deposit in accordance with the award of the Commissioner, but made such deposit shortly after the judgment of the trial court was entered. Even though appellants could not withdraw such money, and still prosecute this appeal, this is an election they were forced to make. The State of Texas discharged its obligation under the judgment when it deposited the amount of the judgment into the registry of the court. The point is overruled.

■ The trial court admitted in evidence the county tax renditions for the year 1961 covering the tracts of land out of which the property was taken. Objection was made to the admission in evidence on the grounds that the figures on the renditions were placed there by the tax assessor-collector, and not the owners; that they were not sworn to by the owners before a notary; and the renditions were signed by an agent and therefore not admissible against the owner. The renditions were signed by Jim McFaddin. J. L. C. McFaddin, one of the parties to this suit testified as follows:

"BY MR. WALLEY:

"Q. —You did render this property for taxes?

"A. No, I think my son rendered it in sixty-two, but I have rendered it in the past.

"Q. He acted as your agent?

"A. Yes."

The case of City of Houston v. Priester, Tex.Civ.App., 302 S.W.2d 948, is cited in support of this point. In the Priester case the trial court refused to admit in evidence the valuations made by the tax assessor-collector on the unrendered rolls, and to which the landowner was not a party. The Court of Civil Appeals upheld the action of the trial court. Such was not the situation here. The renditions admitted in evidence were signed by the son of one of the owners, and were then carried on the rendered

roll. The evidence is at least sufficient to show that the appellants acquiesced in these renditions, in that they made no other renditions of the property, and it is not shown that they protested in any way. The relationship of father and son, and the admission that the son acted as his agent, were circumstances to be considered in determining whether these admissions were admissible in evidence. See Marsh v. State, Tex.Civ.App., 276 S.W.2d 852. The manner in which the property was rendered goes to its weight but not to its admissibility. State v. Doom, Tex.Civ.App., 278 S.W. 255.

■ In appellants' last point it is contended the cumulative effect of all of the matters complained of resulted in prejudice to their rights so that they did not receive a fair and impartial trial. To sustain this point we would have to conclude the errors complained of amounted to such a denial of the rights of the appellants as were reasonably calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure. We have come to no such conclusion.

Appellee has one counterpoint. It is contended the trial court erred in holding the date of taking of appellants' property was June 1, 1961 and in awarding interest from such date in the judgment. The witness, Marvin Neel, a senior resident engineer with the State Highway Department, testified as follows:

"Q. Did your office have jurisdiction of placing the highway markers on the right of way?

"A. Yes, sir."

When asked where they placed the markers, he testified:

"A. We placed them at the north terminal of the property and approximately 1000 feet apart down through the property, so that the land could be identified, and not necessarily on the property division lines, just down—I think they were 1000 feet apart.

"Q. And those markers are designed to establish the right of way, aren't they?

"A. Yes, sir, something like that.

"Q. Now, according to your records, do you have any record in your office that would show the date on which these right of way markers were installed?

"A. No, sir, but we could dig up a letter, I think, showing about the time that we notified our District Maintenance Department when we wanted those things placed. I believe it was about the middle of the summer, last year.

"Q. And the record will show that the condemnation hearing in this case, before the Commissioner, was had on January 17, 1961?

"A. Yeah. I guess so.

"Q. Did you place the markers, the highway markers delineating the right of way there, prior to that time?

"A. I don't believe so.

"Q. All right. Immediately after that date?

"A. Oh, 4 or 5 months after, best I can recall. They were put in there during the summer months.

"Q. In other words, by June the 1st, 1961, they would have been in there, if the condemnation hearing was held in January?

"A. I feel like that's true.

"Q. What did they look like?

"A. Concrete markers about 4½ to 5 feet long, sticking out of the ground about 2 feet, I guess about 4 inches square on top.

"Q. They are permanent markers aren't they, Mr. Neal?

"A. Yes, sir.

"Q. Marking the right of way owned by the State of Texas?

"A. Yes, sir.

"Q. They mark the right of way that has been designated for the proposed right of way?

"A. That's something I am not sure of. We have been through that before. I don't know anything about who owns it.

"Q. That's right. You don't know anything about who owns it at this point.

"A. No, not really.

"Q. Do you know anybody in the State Highway Department that has interfered with Mr. McFaddin and these other people in the use of this land, since you put those little concrete markers up there?

"A. No, sir. Not anything I know of."

This trial began August 27, 1962, and the judgment entered October 9, 1962. The trial court ruled, during the course of the trial, that June 1, 1961, was the date of taking, and any values after that date were immaterial. The witnesses were interrogated throughout the trial, as to the value of the land as of June 1, 1961. The State of Texas deposited no money until after the judgment was rendered.

■ Art. 1, Sec. 17 of the Texas Constitution provides that no person's property may be "taken" without adequate compensation being made. The confusion comes in some cases, where no deposit is made, and the date of "taking" is not easily ascertainable. In Webb v. Dameron, Tex. Civ.App., 219 S.W.2d 581, it is said:

" * * * [t]he word taken implies an actual physical invasion or appropriation of property * * *."

In the case of Lewis v. Texas Power & Light Co., Tex.Civ.App., 276 S.W.2d 950, it is said:

"We also hold that it is not a 'taking' of appellants' property as contemplated by Art. I, § 17, of the Constitution of Texas, Vernon's Ann.St.

"We find no Texas case on the point, but it has been passed on in other jurisdictions. The cases are annotated in 29 A.L.R. 1409, from which we quote: 'An entry on private property for the sole purpose of making the necessary explorations for location is not taking it; the right remains in the owner as fully as before; no permanent injury can be sustained; nothing is taken from him; nothing is given to the company.' And the Supreme Court of Maryland has said: 'The constitutional prohibition against taking private property for public use until compensation is first paid or tendered means taking the property from the owner and actually applying it to the use of the public. It does not mean the preliminary measures necessary in such cases. To hold that compensation must be paid or tendered before a survey should be made, or other preparatory steps taken, would be a construction of the constitution not required by its language, or necessary for the protection of private rights.' Steuart v. Baltimore, 7 Md. 500."

We do not believe the placing of the concrete markers at intervals of 1000 feet along the line of property to be condemned was such an "appropriation" of the property to constitute a "taking". The date of the "taking" in this case was the date of the trial, therefore the judgment of the trial court is reformed in accordance with this opinion, and as reformed, judgment is affirmed.

Reformed and affirmed.