GUADALUPE–BLANCO RIVER
AUTHORITY, Appellant,

v.

Marvin KRAFT, Sr., Appellee.

No. 03–00–00190–CV.

Court of Appeals of Texas,
Austin.

Jan. 11, 2001.

James S. Frost, Kirkendall, Frost & Allen, PLLC, Seguin, TX, for appellant.

Craig L. Austin, San Antonio, TX, for appellee.

Before Chief Justice ABOUSSIE, Justices KIDD and PATTERSON.

KIDD, Justice.

Appellant Guadalupe–Blanco River Authority (the Authority) brought a condemnation action against appellee Marvin Kraft, Sr. The issue of damages was tried to a jury, which returned a verdict for $64,400. On appeal, the Authority challenges the reliability of the methodology of Kraft's expert witness. We affirm.

## FACTS

Kraft owns a 272–acre unimproved tract of land in Hays County. The Authority brought a condemnation action against Kraft for acquisition of an easement and right-of-way across his land in order to lay a water pipeline.[1] The easement consists of a 30–foot wide strip, 4600 feet long, totaling 3.21 acres, which cuts diagonally across part of Kraft's acreage. The pipeline and related improvements are underground except for pipeline drain-valve assemblies, air releases, and vacuum-valve assemblies. The Authority has a perpetual right of access to maintain the pipeline and all of these devices. In the condemnation action, the Authority also sought two temporary easements, each thirty-five feet wide, on either side of the pipeline easement.

Because Kraft did not challenge the right to acquire the easement, the only issue for jury determination was the fair market value of the easement. At trial, the jury returned a verdict indicating the fair market value of the property taken was $64,400, and the trial court rendered a final judgment in that amount. The Authority appeals that judgment raising three points of error: (1) the methodology employed by Kraft's expert was not reliable, (2) the court abused its discretion in admitting the expert's testimony, and (3) without this testimony, there was no evidence of damages in the amount of $64,400. The Authority asks us to reverse and render judgment that Kraft recover only $7,630 based on its own expert's testimony.

---

1. The pipeline carries water from the Guadalupe River to the City of San Marcos.

## DISCUSSION

The basis for an expert's testimony must be reliable to be admissible. *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 726 (Tex.1998). The trial court, in discharging its duty as gatekeeper, must determine how to assess the reliability of particular testimony. *Id.* There must be some basis to show the reliability of the opinion offered. *Id.* The criteria for assessing reliability will vary depending on the type of expert and the nature of the evidence. *See id.* at 726–27. In some cases, an expert's experience alone may provide a sufficient basis for such testimony. *Id.* at 726. The trial court has broad discretion in determining admissibility of an expert's testimony, and we will reverse only if the trial court abuses that discretion. *See E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556–57 (Tex. 1995); *City of Harlingen v. Estate of Sharboneau*, 1 S.W.3d 282, 285 (Tex. App.—Corpus Christi 1999, pet. granted). We gauge abuse of discretion by whether the trial court acted without reference to any guiding rules or principles. *Robinson*, 923 S.W.2d at 558. This Court may not reverse for abuse of discretion merely because we disagree with the decision of the trial court. *Id.*

We first consider Kraft's contention that the Authority did not preserve any alleged error for appellate review. Kraft argues that the Authority inadequately apprised the trial court of the basis for its objection to the testimony of his expert, Kirby Gholson. Further, he contends that the Authority did not move to strike or restrict Gholson's testimony and failed to object to the tender of the appraiser's summaries and the jury instructions. As Gholson began testifying about his market valuation of the easement, the Authority objected, "I'm going to make an objection based upon the failure of this witness's methodology to meet the reliabil-ity standards as articulated by the Supreme Court in *Gammill versus Jack Williams Chevrolet* as applying to all expert testimony." This objection adequately informed the trial court to rule on the reliability of Gholson's methodology and hence, its admissibility. *See* Tex.R.App. P. 33.1(a)(1)(A). The trial court excused the jury and allowed both parties to question Gholson on voir dire. After the hearing, the court overruled the Authority's objection. This was sufficient to preserve error. *See id.* 33.1(a)(2)(A). Therefore, we conclude that the Authority preserved its complaint for our review.

### I. Reliability of Expert's Methodology

The Authority contends that the methodology employed by Gholson was not reliable and his opinion should not have been admitted. During voir dire, Gholson described three methods appraisers use to determine the value of condemned property: income, cost, and sales-comparison. Gholson explained that he used the sales-comparison approach in evaluating the easement at issue, which involves "search[ing] the market for what's considered to be ... sales comparable to the subject and then mak[ing the] decision as to what the subject is worth based on these current sales." Unfortunately, Gholson did not have comparable sales between willing buyers and willing sellers of easements on narrow strips of land,[2] so he based comparable sales on "3.2 acres with typical utility in the marketplace." He stated that the parent tract has access to water and electricity on State Highway 123. At its closest point, the easement is approximately 3900 feet from that highway.

Gholson presented evidence of two sales. The first involved a tract in a commercial area, which was 418 feet deep with 208 feet of frontage on State Highway 123. The second sale involved a 1.08–acre tract in a

---

2. In the marketplace, pipeline easements are generally the subject of condemnation actions and therefore, there are virtually no sales involving a willing seller and willing buyer on comparable strips of land.

residential subdivision, which was 144 feet by 302 feet, fronting on a county road. Gholson stated that public water and electricity were available to both tracts and both were served by a septic system.

The Authority first asserts that Gholson's testimony was not reliable because "valuing the 30 ft. by 4,600 ft. easement not as it existed on the ground but instead as a hypothetical rectangular tract ... was not a methodology recognized in the appraisal discipline." Second, the Authority contends that the expert evidence was "based on an assumption materially different from the undisputed facts" in that Gholson appraised a hypothetical 200–foot by 690–foot easement that adjoined a highway rather than a 30–foot by 4,600–foot easement that was 3,900 feet from the road. The Authority maintains that it discredited Gholson's methodology with its own expert, Albert Menn, who presented the only evidence based on a reliable methodology.

Menn testified that comparing an easement that is not a usable tract with sales of two tracts that are usable is improper. He stated that, in his opinion, an appraiser should "look at the whole property; you look at the 272 acres, you take a portion or pro rata part of that, and that's the way you go about valuing the property." He explained that in comparing the entire property, an appraiser should find similar tracts of land—for example, economic units that are usable—for comparison. By this method, Menn sought to compare sales of large tracts, such as 275 to 300 acres, with the easement being taken.

The question presented to us is whether Gholson established that his method of determining the fair market value of the easement by comparing small-acreage sales of rectangular, usable tracts is reliable. The Authority argues that Gholson's asserted use of the sales-comparison approach does not establish reliability and that a fact "is not so simply because 'an expert says it is so.'" *See Merrell Dow*

*Pharms., Inc. v. Havner*, 953 S.W.2d 706, 712 (Tex.1997).

### A. Comparable Sales

■ Texas courts have long preferred comparable sales data to establish the market value of condemned land. *See Bauer v. Lavaca–Navidad River Auth.*, 704 S.W.2d 107, 110 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.); *Southwestern Bell Tel. Co. v. Ramsey*, 542 S.W.2d 466, 474 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.); *City of Dallas v. McLemee*, 378 S.W.2d 393, 394–95 (Tex.Civ.App.—Dallas 1964, no writ); *County of Bexar v. Cooper*, 351 S.W.2d 956, 958 (Tex.Civ.App.—San Antonio 1961, no writ). As the trial court instructed the jury in the court's charge:

'MARKET VALUE' means the price which the property which is the subject of these proceedings would bring when offered for sale by one who desires to sell, but is not obliged to sell, and bought by one who desires to buy, but is under no necessity of buying, taking into consideration all of the uses to which it is reasonably adaptable and for which it either is or in all reasonable probability will become available within the reasonable future.

*See State v. Windham*, 837 S.W.2d 73, 77 (Tex.1992) (quoting *State v. Carpenter*, 126 Tex. 604, 89 S.W.2d 194, 202 (1936)). The best evidence of market value of condemned land is the proof of sales of land near the land in question. *Bauer*, 704 S.W.2d at 110. In fact, comparable sales of land in the same area as the condemned land are considered more reliable than the unsubstantiated opinions of experts. *Id.; see also Cooper*, 351 S.W.2d at 958.

■ Gholson explained the comparable sales approach and the specific sales he used to value the property in question. Gholson's methodology constituted a quantifiable process giving rise to his conclusion. In a similar situation, such methodology was held to be reliable and competent. *See Sharboneau*, 1 S.W.3d at 288.

Further, Kraft brought to the attention of the trial court relevant sections of a well-known condemnation treatise. *See* 2 Madison Rayburn, *Rayburn on Condemnation* §§ 16.00–.35, 17.06 (21st ed.1998). That treatise advises attorneys that "[o]ne of the most often used and effective types of evidence in condemnation cases is … what the market sales reveal as to how high or how low similar and comparable property to that in question has actually sold for in the market…." *Id.* § 16.03. During voir dire, Kraft enunciated Rayburn's rule that if "reasonable minds may differ as to the existence of comparability or similarity, 'objections go to the weight rather than to the admissibility of the evidence.'" *See id.* § 17.06 (quoting *State v. Morse*, 342 S.W.2d 165, 167 (Tex.Civ. App.—Dallas 1960, writ ref'd n.r.e.)).

The Authority asserts that its expert's testimony provided the *only reliable methodology* as a matter of law: taking a prorata portion of the value of the entire tract to determine the value of the easement. Kraft counters that the Authority's approach is based on the average-value methodology that "has never received the blessing of Texas case law." Kraft cites *Roberts v. State*, 754 S.W.2d 477 (Tex. App.—San Antonio 1988, writ denied), in which the court held that reliance on that theory was reversible error. *Id.* at 481.

Kraft claims the average-value methodology is always inadmissible. However, it is only inadmissible in specific situations, and not on these facts. *See State v. ADSS Props., Inc.*, 878 S.W.2d 607, 615 (Tex. App.—San Antonio 1994, writ denied). Improper averaging occurs when there are at least two economic units (the condemned land and the remaining land), each with significantly different per-unit values, and the valuation estimates derived by the appraiser involved mixing, or "averaging," lower-value land with higher-value land to arrive at adequate compensation. *Id.* "The supreme court expressly disapproved of valuation witnesses using the average per-unit value of a larger tract to value the part taken when it is *undisputed* that 'at the time of taking' the parcel condemned has a higher unit value than the remainder tract." *Id.* (quoting *State v. Meyer*, 403 S.W.2d 366, 375 (Tex.1966)).

■ Here, there was no allegation that the condemned portion was worth more than the remaining tract. Rather, the Authority's expert testified that the easement was not an economic unit. Where the part taken is not a self-sufficient economic unit, independent of the remainder of the parent tract, its value may be ascertained by evaluating it as a proportionate part of the whole. *City of Tyler v. Brogan*, 437 S.W.2d 609, 613 (Tex.Civ.App.—Tyler 1969, no writ). The methodology employed by the Authority's expert was not erroneous as Kraft suggests.

This does not mean, however, that the Authority's approach was the *only* proper means of valuation. In *Windham*, the experts offered conflicting methods for valuing the condemned land. *Windham*, 837 S.W.2d at 75–76. The State's experts used sales comparable to the entire tract of land while the landowner relied on sales comparable to the small-acre tract actually condemned. The court held that the jury was permitted to consider *both* methodologies. *Id.* at 77; *see also Ramsey*, 542 S.W.2d at 471. Here, then, the trial court properly allowed the jury to hear the two experts' conflicting theories. We hold that the trial court did not abuse its discretion in admitting Gholson's testimony.

### B. Materially Different Facts

■ The Authority next contends that Gholson's testimony is unreliable on its face because it compares a narrow, unusable tract with two rectangular, usable tracts. The Authority points to cases holding that assumed facts that vary materially from the actual, undisputed facts are without probative value and are by definition unreliable. *See Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995); *Texas Indus., Inc. v. Vaughan*, 919 S.W.2d 798, 802 (Tex.App.—Houston [14th

Dist.] 1996, writ denied). In *Windham,* the supreme court addressed a case in which the State had condemned 2.12 acres, that "could not be considered a self-sufficient economic unit," from a nineteen-acre tract. *Windham,* 837 S.W.2d at 74. The landowner added 1.64 acres to the configuration in order to create an economic unit that could be valued by the jury. The question in *Windham* was whether the trial court could exclude the State's testimony that the entire nineteen acres formed the appropriate economic unit, rather than the 3.84–acre tract designated by the landowner.[3] The court held that the trier of fact should be able to consider all competing evidence of valuation supported by otherwise admissible expert testimony. *Id.* at 78. In so holding, the court said that the landowner may not unilaterally designate the economic unit for valuation without giving the condemnor the opportunity to controvert that designation. *Id.* at 76.

Here, the Authority seeks to exclude the landowner's method for designating the economic unit because the sales used by Gholson are not comparable. During voir dire, Gholson explained that the Authority "determined both the location and the configuration of the part taken, so essentially took what could be considered the prime portion of the subject tract." Similarly in *Windham,* the landowner contended that the acreage taken by the State "was configured in such a manner that it could not be considered a self-sufficient economic unit...." *Id.* at 74. In that case, the landowner reconfigured the size of the property by adding acreage to make it an economic unit. Here, Kraft reconfigured the shape of the property to make it an

economic unit. Even if we disagree with Kraft's reconfiguration, its admissibility is subject to the broad discretion of the trial court. *See Sharboneau,* 1 S.W.3d at 285. For the trial court to permit the reconfiguration, especially in light of *Windham,* was not an abuse of discretion.

◼ Admissibility of specific comparable sales is also subject to the trial court's discretion. *Ramsey,* 542 S.W.2d at 476.

There can be no absolute formula or definition of what constitutes similar or like property. Certainly, comparable does not mean identical. The determination will vary with each particular fact situation. Such elements as nearness in time, location, character, situation, usability and improvement may be considered as shedding light on the value of the land in question. Manifestly, the trial judge in applying so vague a standard must be granted a wide discretion, and his action will not be overturned unless an abuse of discretion is shown.

*Id.* (citations omitted); *accord McFaddin v. State,* 373 S.W.2d 259, 262 (Tex.Civ. App.—Beaumont 1963, writ ref'd n.r.e.) ("[T]o render testimony of sales of other property admissible in evidence[ ] is not predetermined by any inflexible, hard and fast general rule, but must rest largely in the discretion of the judge, and the rules vary with the facts of the cases." (quoting *Broesche v. State,* 348 S.W.2d 770, 773 (Tex.Civ.App.—Houston 1961, no writ))). Allowing Gholson to testify about the two sales of small, rectangular tracts was not an abuse of discretion.

◼ We follow *Windham's* reasoning that if one party is permitted to present evidence of market value, then the other

---

3. In *Windham,* the State did not dispute that the landowner could reconfigure the amount of acreage taken. Rather, the State challenged the landowner's claim that the "highest and best use" of the property was for commercial development. The State claimed the highest and best use was for investment purposes, and for this reason, the appropriate economic unit was the entire nineteen-acre tract. *State v. Windham,* 837 S.W.2d 73, 74

(Tex.1992). For our purposes, the parties do not dispute the highest and best use. This does not change our analysis. The proper approach for the trial court to take is to allow the jury to hear evidence about what the parties claim is the appropriate economic unit. *See id.* at 77 ("It is then for the jury to decide which evidence to accept and which to reject in deciding the ultimate issue of market value.").

should be allowed to present evidence based on its competing theory. *See Windham*, 837 S.W.2d at 77. Even though the comparable sales are allegedly based on the wrong assumptions and "are not truly comparable," "[t]he perceived flaws in the testimony of [the] experts are matters properly to be tested in the crucible of adversarial proceedings; they are not the basis for truncating that process." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1079 (5th Cir.1996) (holding that expert testimony was reliable). We hold, therefore, that the trial court properly allowed Gholson to testify.

This result does not contradict the trial court's role as gatekeeper in excluding an expert's unreliable testimony. An expert witness, qualified by knowledge, skill, experience, training, or education, may assist the trier of fact in understanding the evidence or determining a fact in issue. Tex.R. Evid. 702. Our state supreme court followed the United States Supreme Court's reasoning in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), in holding that Texas Rule of Evidence 702 requires the proponent of expert testimony to show that the testimony is based upon a *reliable foundation. Robinson*, 923 S.W.2d at 556.

Three years after *Daubert* was decided, the Court of Appeals for the Fifth Circuit considered whether a district court properly excluded condemnation expert testimony on the grounds that it was "so lacking in reliability that it should be excluded from evidence ." *14.38 Acres of Land*, 80 F.3d at 1077. In that case, the United States condemned land to build a new levee to control flooding. Evidence proffered by the landowner's experts to establish market value showed that the property was likely to flood given that the remainder was on the unprotected side of the levee. The district court excluded the experts' opinions, citing *Daubert*, because they were speculative and not based on reliable foundations.

The court of appeals vacated the district court's judgment, stating that the district court was too stringent in applying the *Daubert* reliability test. *Id.* at 1078. It explained that the "trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system: 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* (quoting *Daubert*, 509 U.S. at 596, 113 S.Ct. 2786). The court confirmed that in determining the admissibility of expert testimony, the district court should approach its task with proper deference to the jury's role as the arbiter of disputes between conflicting opinions. *Id.* at 1077. This is especially true in an eminent domain action, in which expert opinion testimony acquires special significance because the sole issue is the value of condemned property. *Id.*

> The value of property taken by the Government, which is no longer on the market, is largely a matter of opinion. Since there are no infallible means for determining with absolute conviction what a willing buyer would have paid a willing seller for the condemnee's property at the time of taking, eminent domain proceedings commonly pit the Government's valuation experts against those of the landowner. Thus, the exclusion of one or all of either party's proposed experts can influence substantially the amount of compensation set by the factfinder.... Recognizing the critical role of expert witnesses in these cases and the strong interest on both sides that compensation be just, trial courts should proceed cautiously before removing from the jury's consideration expert assessments of value which may prove helpful.

*Id.* at 1077–78 (quoting *United States v. 68.94 Acres of Land, More or Less*, 918 F.2d 389, 393 (3rd Cir.1990)). Juries are given considerable latitude in determining

the weight of the evidence when the question is one of value or damages—especially when they are not readily quantifiable. *See id.* As a general rule, therefore, questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility and should be left for the jury's consideration. *Id.* at 1077.

We find the Fifth Circuit's reasoning persuasive in examining the reliability of expert testimony in condemnation cases. The ultimate question in determining the value of the property is one of proof as to market value, not abstract questions as to what may or may not be considered by the jury in assessing damages. *All Am. Pipeline Co. v. Ammerman,* 814 S.W.2d 249, 252 (Tex.App.—Austin 1991, no writ).

Because we hold that the trial court did not abuse its discretion in admitting Gholson's testimony, we overrule the Authority's first and second issues.

## II. No Evidence

The Authority contends that the only evidence supporting the jury's verdict was Gholson's testimony, and that "[b]ecause [Kraft] did not prove his expert evidence to be reliable, such evidence, even though admitted, constitutes no evidence of value." In light of our ruling on the Authority's first two complaints, we overrule the Authority's third point of error.

## CONCLUSION

The trial court did not abuse its discretion in admitting the testimony of Kraft's appraiser to assist the jury in valuing the condemned land. Kraft established that using comparable sales of small-acre tracts was a reliable methodology and that any discrepancy in the configuration of the tracts goes to weight and not admissibility. For these reasons, we overrule the Authority's points of error and affirm the judgment of the trial court.

PATTERSON, Justice, dissenting.

I agree with the majority that (1) "expert opinion testimony acquires special significance" in eminent domain cases, and (2) whether the trial court properly admitted the expert's testimony is a matter within the trial court's discretion and will not be disturbed absent an abuse of discretion. *See E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 558 (Tex. 1995). For these reasons and because the landowner did not carry his burden of establishing the reliability of the expert's testimony, I respectfully dissent. *See Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 726 (Tex.1998).

The landowner's expert evidence should be measured by the standard articulated in *Gammill v. Jack Williams Chevrolet, Inc.:* Does the expert's opinion comport with applicable professional standards outside the courtroom, and does it have a reliable basis in the knowledge and experience of the discipline? *Id.* at 725–26. On appeal, the landowner does not argue that he established the reliability of the expert's opinion or his underlying methodology. He argues instead that "[t]here is very little authority in Texas or elsewhere applying [*Daubert v. Merrell Dow Pharmaceuticals., Inc.*] to opinion testimony as to value in an eminent domain case" and then asserts in a summary fashion that he employed a comparable sales approach. That the expert had a theory of valuation does not make it admissible without a further showing. "[W]hether an expert's testimony is based on 'scientific, technical or other specialized knowledge,' *Daubert* and Rule 702 demand that the district court evaluate the methods, analysis, and principles relied upon in reaching the opinion." *Id.* at 725.

This case, in fact, demonstrates the rationale for requiring a showing of reliability and relevance for expert testimony to be admissible under Rule 702. *See Robinson,* 923 S.W.2d at 553. The landowner's real estate appraiser was his only witness. The landowner did not testify. The expert testified that he valued the property using

a sales comparison approach, but he testified that there were no comparable sales. Because the easement at issue was a strip of land 30 feet wide and 4600 feet long running diagonally across Kraft's property that did not constitute an economic unit, the expert reconfigured the property for purposes of his analysis to form a hypothetical 3.21–acre tract that was rectangular in shape. He also valued the easement by assuming a different location for the tract. Although the strip of land at its closest point is approximately 3900 feet from State Highway 123, a four-lane highway connecting San Marcos and Seguin, the expert's valuation posited that the land *adjoined* the highway.

It may be that there is some basis for reconfiguring and moving the property for the purposes of valuation. Certainly, real estate appraisal is not an exact science and requires the exercise of personal judgment. *See Parallax Corp., N.V. v. City of El Paso,* 910 S.W.2d 86, 89 (Tex.App.—El Paso 1995, writ denied). But here the landowner fails entirely to demonstrate that the underlying methodology of his theory is reliable under the *Daubert–Robinson–Gammill* factors. At trial, when counsel for appellant objected to "the failure of this witness's methodology to meet the reliability standards as articulated by the Supreme Court in *Gammill versus Jack Williams Chevrolet* as applying to all expert testimony," counsel for the landowner complained that the objection was incomprehensible. Despite cross-examination of the expert by appellant's counsel challenging the appraiser's theory, the landowner offered no evidence to show his expert's opinion or its underlying methodology met any aspect of the *Gammill* standards. Failing to acknowledge that it was his burden to establish reliability, the landowner's counsel queried in his brief on appeal: "Wherein is the appraisal testimony 'unreliable?' What was wrong with the 'methodology?' The objection doesn't say. Both the trial court and opposing counsel are left to guess."

To be admissible, an expert must be qualified, and his opinion must be relevant and have a reliable basis. *Gammill,* 972 S.W.2d at 726. The burden to establish reliability is on the proponent of the evidence. *Id.* at 718–19. "Once the party opposing the evidence objects, the proponent bears the burden of demonstrating its admissibility." *Robinson,* 923 S.W.2d at 557. Among the non-exclusive factors that may be considered in determining the reliability of the basis of the expert's opinion are: (1) whether the theory can and has been tested; (2) whether the theory has been subjected to peer review; and (3) the general acceptance of the theory in the relevant community. *Gammill,* 972 S.W.2d at 720; *Robinson,* 923 S.W.2d at 557. The trial court's discretion extends to determining which of the *Daubert–Robinson–Gammill* factors reasonably measures whether an expert's opinion is reliable, and whether other factors might apply. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

When the *Robinson* factors cannot be applied to the testimony at issue, the trial court must still satisfy Rule 702's reliability requirement. All expert testimony, regardless of whether it can be analyzed using the specific factors set forth in *Robinson,* must satisfy the *Robinson* standard for reliability and relevance. *Gammill,* 972 S.W.2d at 724, 727. The test in such cases is whether " 'there is simply too great an analytical gap between the data and the opinion proffered.' " *Id.* at 727 (quoting *General Elec. Co. v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)). In applying *Gammill* to expert testimony based upon experience or other specialized knowledge, Texas courts have conducted detailed analyses of the basis for the expert's opinions and how those opinions are tied to the facts of the particular case. *See, e.g., City of Harlingen v. Sharboneau,* 1 S.W.3d 282, 284–88 (Tex.App.—Corpus Christi 1999, pet. granted) (applying *Robinson* to the expert

opinion of a real estate appraiser); *Olin Corp. v. Smith*, 990 S.W.2d 789, 795–98 (Tex.App.—Austin 1999, pet. denied). To the extent the majority relies on pre-*Daubert* cases, absent some type of scrutiny into the basis for the conclusions drawn in those cases, I would find them inapposite.

The case of *City of Harlingen v. Sharboneau* cited by the majority is instructive. While it may be readily distinguished, it also supports the exclusion of the evidence at issue here. In that case, beyond the expert's qualifications, the court received into evidence a written report which described "at some length" the expert's method and its general utility in the appraisal process. *Sharboneau*, 1 S.W.3d at 285. The study included an initial examination of the demographic and economic prospects for the Lower Rio Grande Valley where the tract was located. *Id.* The appraiser then examined the feasibility of subdividing the tract and further described his methodology. *Id.* at 285–86. Importantly, the appraiser described in detail the basis for reaching each conclusion. *Id.* at 286. Having established the use of the property, the appraiser then undertook to appraise the value of the land when put to that use. *Id.* He further described the very extensive valuation process he undertook. *Id.* at 286–88. He estimated general overhead, sales expenses, sales commissions associated with developing the land, and the developer's profit. *Id.* at 288. After studying past experiences of local developers, he developed a formula derived from his methodology. *Id.* He provided the resulting calculation to the court. Finding the trial court did not abuse its discretion in admitting the testimony, the court concluded: "Our review of [the appraiser]'s report demonstrates that [he] used a quantifiable process which gives rise to the conclusion reached." *Id.*

In contrast, the expert here provided no report or other evidence to address the "analytical gap" between the data offered and his conclusions. Nor did he attempt to address any of the reliability factors.

His testimony presents precisely the type of expert testimony lacking any indicia of reliability that the supreme court sought to address in *Merrell Dow Pharmaceuticals, Inc. v. Havner* and *Gammill.* "[I]t is not so simply because 'an expert says it is so.'" *Gammill*, 972 S.W.2d at 726; *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 712 (Tex.1997).

Whether evidence relating to comparable sales is admissible in Texas courts is not the issue here. That the landowner offered no evidence relating to the *Daubert–Robinson–Gammill* factors, thus failing to meet *any* of the flexible factors required by case law and Rule 702, is the issue. I would hold that the landowner, as the proponent of the evidence, failed to carry his burden with the mere assertion that he used a comparable sales approach and citation to two *noncomparable* properties. It is certainly curious that the expert fails to cite to any "comparables" involving easements. Condemnation cases dealing with pipeline easements are hardly rare or unusual. They are, however, distinct from sales of economic units of property located on highways adjoining commercial or residential land. It is precisely for that reason that they are relevant.

Parties may challenge opinion testimony on the grounds that it is unreliable, and therefore "no evidence." *See Havner*, 953 S.W.2d at 711–14. A "no-evidence" challenge will be sustained: (1) when there is a complete absence of evidence of a vital fact; (2) when rules of law or evidence preclude according weight to the only evidence offered to prove a vital fact; (3) when the evidence offered to prove a vital fact is no more than a scintilla; or (4) when the evidence conclusively establishes the opposite of the vital fact. *Id.* Appellant's challenge to the expert's testimony relies on the second "no-evidence" category. By challenging the reliability of the expert's testimony, and therefore its admissibility, appellant contends the testimony is "no evidence" because a "rule of law or evidence," specifically Rule 702, pre-

cludes giving the evidence any weight. *Id.* at 711. I would agree.

Because the landowner failed to carry his minimal burden of establishing the prerequisites of Rule 702, I would hold that the trial court erred by overruling appellant's objections that the expert's testimony was inadmissible because it was unreliable. I would find that because the landowner failed to make *any* showing of reliability, the trial court abused its discretion by acting without reference to well-established principles guiding the admissibility of expert testimony. This error harmed appellant because the expert's testimony is the only evidence that supports the jury's damage award. *See* Tex.R.App. P. 44.1(a).

I would sustain appellant's issues and reverse the judgment of the trial court, remanding the cause for entry of judgment in favor of the landowner in the amount of $7630.