W.H. BAUER, Appellant,

v.

**LAVACA–NAVIDAD RIVER AUTHORITY, Appellee.**

No. 13–85–031–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 31, 1985.

Rehearing Denied Jan. 30, 1986.

William L. Burnett, E.H. Thornton, Jr., Houston, W.S. Fly, Victoria, for appellant.

John D. Murphree, Victoria, for appellee.

Before NYE, C.J., and BENAVIDES and DORSEY, JJ.

## OPINION

BENAVIDES, Justice.

W.H. Bauer is a landowner in Jackson County. The Lavaca-Navidad River Authority (hereinafter "Authority") is a state conservation and reclamation district[1] which sued for condemnation of a pipeline easement across Bauer's land. A partial summary judgment left at issue only the amount of damages from the Authority's taking. Bauer appeals the trial court's award of damages, contending that the court erred in excluding evidence of the value of the land condemned, and disputing the court's findings on land values. We agree that the trial court erred in ruling appellant's evidence of land value inadmissible. We therefore reverse and remand the cause for a new trial.

Specifically, appellant claims in his first two points of error that the district court erred in refusing to consider testimony regarding (1) the highest and best use of the property in question; and (2) compensation paid by companies without the power of eminent domain.

The portion of Bauer's land taken through the Authority's eminent domain power is an easement fifty feet wide and about 10,000 feet long, totalling 12.62 acres. The easement allows the Authority to build and permanently maintain a water pipeline under Bauer's land. The evidence which the trial court ruled inadmissible was testimony from appellant Bauer, from Ronald Clinkscales, and from Honorable Sam D. Seale that the "highest and best use" of the land in question was for the sale of easement rights-of-way. In a trial before the court, the witnesses were allowed to testify to their opinions of the land's value and the facts supporting their opinions, subject to the Authority's continuing objections that the testimony on "highest and best use" value and on comparable sales to companies without the power of eminent domain was improper. The trial court took the objections under advisement and later ruled that he would sustain the objections and not consider the proferred testimony in reaching his decision.

The excluded evidence is summarized as follows. Appellant Bauer testified that he owned the land in question and that he had thirty-five years' experience in acquiring and laying rights-of-way. He had lived in Jackson and Calhoun Counties all of his life, and had been active in negotiating land sales of various types to "heavy industries." He had negotiated the sale of an electrical power line, a railroad, and three pipeline easements on the land in question before the date of the Authority's taking. Another electrical powerline was already in

1. See TEX. CONST. art. XVI, § 59 (Vernon 1955).

place before he bought the land. Bauer testified to the market value of the Authority pipeline easement based on those he had sold. He further testified that he had always attempted to sell these easements within a 432-foot strip of his property between Farm-to-Market Road 1593 and the most westward easement. He also attempted to have the pipelines laid as close as possible to each other, so that room would remain for as many future pipelines as possible, consistent with his use of this 432-foot strip as a "pipeline corridor." Before the Authority condemned an easement in the middle of the unsold portion of the "corridor," his attempts had always been successful.

Ronald Clinkscales testified as a real estate appraiser. He stated that, in his opinion, the highest and best use of the condemned land was for the sale of pipeline easements. In his opinion, a pipeline corridor had been established which would include the condemned land. Based on comparable sales in the area, and on adjustments to the average sale price, Clinkscales testified that, in his opinion, the reduction in value of Bauer's land was $354,558.47. (The trial court awarded Bauer $57,650.00.)

Sam D. Seale, a county judge in Jackson County, leased the land adjoining Bauer's land to the south along FM 1593. He testified that he sold easements for the same pipelines that Bauer sold, and he testified as to the value received for those easements. He further testified to his opinion of the market value for pipeline easements.

■ We view the offered evidence in light of its materiality to the proceedings. Only the issue of damages by reason of the Authority's condemnation was before the court. In general, the measure of damages in an easement condemnation proceeding is the fair market value of the land taken, plus any diminution in value to the remainder of the land. *See City of Austin v. Cannizzo,* 267 S.W.2d 808, 812 (Tex.1954); *State v. Carpenter,* 126 Tex. 604, 89 S.W.2d 194, 196–97 (Tex.Comm'n App. 1936), rehearing denied, 89 S.W.2d 979.

■ The owner of the condemned land is entitled to have the fact finder consider, in determining its fair market value, the highest and best use to which the land is adaptable. *Central Power and Light Co. v. Graddy,* 318 S.W.2d 943, 949 (Tex.Civ.App. —Houston 1958, no writ); *see also City of Austin v. Cannizzo,* 267 S.W.2d at 815.

Appellee, Authority, claims that Bauer could not be allowed to value the property as a "separate parcel" because the condemned property was part of a larger tract of land devoted to pasturing cattle and was not effectively severed from that parent tract. Appellee relies on *United States v. 8.41 Acres of Land,* 680 F.2d 388 (5th Cir. 1982). There, as here, at issue was a "pipeline corridor" void of pipelines. The easements condemned were immediately adjacent to several existing pipeline easements, and the landowners had taken no steps to segregate the tracts condemned from the parent tracts being utilized for pasture purposes. Appellee asserts that here, as in *8.41 Acres of Land,* the landowners had the burden of proving the market value of the condemned tracts before and after the taking, but failed in their burden of proof by offering only evidence of sales of pipeline easements. The Fifth Circuit noted in that case that the landowners had taken no steps to sever the condemned strips from the remainder of the property, and the mere fact that the landowners *hoped* that these tracts would be acquired for pipeline purposes did not sever them from the rest of the land; also, the landowners' witnesses could not define the parameters of the "potential" pipeline corridor within which the fifty-foot strip was located. *Id.* at 394.

■ The case at bar is distinguishable from *8.41 Acres of Land* because here appellant offered evidence at trial which showed that as early as 1958 his property was used for easement rights-of-way, and at the time of taking by the Authority, there were three pipelines, two electric transmission lines, and a railroad in place in a well-defined corridor.

Texas courts have held that the landowner is not compelled to value an easement taken as a part of the whole, but has the right to introduce testimony showing market value as if the part taken stood alone as severed land. *State v. Carpenter,* 89 S.W.2d 194 (Tex.1936); *Southwestern Bell Telephone Co. v. Ramsey,* 542 S.W.2d 466, 471 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.). Under the evidence, it seems obvious that the tract in question had been effectively severed. At trial even the Authority appraiser, Mr. Lewis, recognized appellant's easement corridor and appraised it separately from the parent tract. Three pipelines existed on the tract at the time of taking, and prior to that date the corridor

had been defined and severed from the rest of the property.

■ The best evidence of market value of condemned land is the proof of sales of land near the land in question, at the same time as the taking in question, from a willing seller to a willing buyer. *8.41 Acres of Land* at 388. In fact, comparable sales of land in the same area as the condemned land are considered more reliable than the opinions of experts. *Southwestern Bell Telephone Co. v. Ramsey*, 542 S.W.2d at 474; *City of Dallas v. McLemee*, 378 S.W.2d 393, 394–95 (Tex.Civ.App.—Dallas 1964, no writ); *County of Bexar v. Cooper*, 351 S.W.2d 956 958 (Tex.Civ.App. —San Antonio 1961, no writ). In addition, the government's taking is to be considered the same as a private purchase of the land in question for its highest and best nongovernmental use in the open market. *See United States v. 499.472 Acres of Land*, 701 F.2d 545, 549 (5th Cir.1983); *United States v. 101.88 Acres of Land*, 616 F.2d 762, 772 (5th Cir.1980).

Appellant in the case at bar offered evidence (through the testimony of adverse witness, Charles Moore, former Pipeline Department Manager for Big Three, Inc.) of the prices paid by Big Three, Inc., a private corporation, to five landowners owning tracts of land to the south of appellant's tract. Appellee claims that Moore's expert testimony was admissible only to show the basis of his opinion, but inadmissible as independent evidence to prove the market value of the land in question, citing *State v. Oakley*, 356 S.W.2d 909 (Tex.1962). The court in *Oakley*, however, additionally stated that comparable sales are inadmissible as independent evidence of market value *where the expert had no first-hand knowledge* of those sales (emphasis added). In this case, Moore was the person who negotiated those sales *first-hand.* We find no reason to exclude his testimony.

■ Evidence of recent sales of other property, meeting the test of similarity, should be admitted. *Cannizzo*, 267 S.W.2d at 815; *Gulf and Interstate Railway Co. of Texas v. Stephenson*, 212 S.W. 215 (Tex. Civ.App.—Galveston 1919, no writ). To be admissible on the issue of market value of the property in question, the Big Three, Inc., easement sales needed to meet three tests: (1) reasonable similarity; (2) not too remote in time and distance; and (3) not compulsory, but free and open. *Bradfield*

*v. State*, 524 S.W.2d 438, 440 (Tex.Civ.App. —Austin 1975, writ ref'd n.r.e.). The Big Three, Inc., easement sales were vicinal to appellant's property, being 1½, 2½, 3½ and 5 miles south of and on the same side of FM 1593 as Bauer's property; all were 30-foot wide permanent and 15-foot wide temporary easements, therefore similar in width to Authority's easements, which were 50 feet wide; and were acquired approximately 18–20 months before the Authority's acquisition of Bauer's property. All easements were to be used in serving Formosa Plastics, USA, the same facility to be served by the Authority's water line. Moreover, one of the neighboring landowners, County Judge Sam Seale of Jackson County, testified at trial and confirmed that his sale to Big Three, Inc. was free, open and voluntary. In addition, Clinkscales testified that his discussions with each landowner and with Big Three, Inc., confirmed that each sale was free, open and voluntary. Seale corroborated fully Bauer and Clinkscales' testimony that the highest and best use of the property was for easement purposes and this property had been adapted to, and was adapted to such purposes. Seale's property, located approximately 2–3 miles from Bauer's, was traversed by many of the same easements, including the Authority's pipeline, electrical powerlines, and railroad tracks.

Contrary to appellee's argument, we do not believe it was "obvious" that Big Three was under a necessity to purchase appellant's easements; Mr. Moore even admitted they could have put the pipelines elsewhere, but by paying the price asked by the landowner, Big Three could build the pipeline very cheaply and make a profit. Big Three used a per-rod basis when it purchased the rights-of-way at $140–$160 per rod. This, according to Moore, was the common way in which rights-of-way or pipelines were bought and sold at that time. Charles Lewis, appellee's witness, also testified on cross-examination that it is common practice to purchase a right-of-way based on rods rather than acreage figures. The evidence of comparable sales to Big Three, Inc. should have been admitted at trial.

In his third, fourth and fifth points of error, appellant asserts that the district court's monetary findings in the before and after taking market values of the permanent easement, the temporary construction easement taken, and the damages to appel-

lant's remaining property were so against the great weight and preponderance of the evidence as to be manifestly wrong.

At trial, Mr. Bauer's appraiser, Mr. Clinkscales, testified that the highest and best use of the property taken by the Authority was for the sale of pipeline easements. He also testified that total damages by reason of the taking was $354,-558.57, calculated as follows:

1. Reduction in market value of area covered by 50-foot permanent easement: $171.107.88
2. Reduction in market value of area covered by 50-foot temporary easement: 36,305.47
3. Damages to 16.44-acre remainder (that portion of the pipeline corridor lying between the Authority's easements on the west and FM 1593 on the east): 147,145.12
   TOTAL DAMAGES: $354,558.47

The Authority's appraiser, Mr. Lewis, testified that the property's highest and best use was for agricultural and recreational purposes, while holding for future development either as rural homesites or possible industry use. Mr. Lewis testified that damages totalled $45,750.00, calculated as follows:

1. Reduction in market value of 12.62-acre permanent easement: $29,975.00
2. Reduction in market value of 12.62-acre temporary easement: 15,775.00
3. Damages to the remainder of the affected area: – 0 –
   TOTAL DAMAGES: $45,750.00

Appellant offered testimony through himself and two other witnesses as to highest and best use of the property condemned was or is for easement rights-of-way. Appellant offered evidence regarding payment for other easements acquired by a company without power of eminent domain. The trial judge allowed all such testimony to be offered by bill of exception, and then specifically refused to consider it. The court accepted only the testimony of the Authority's appraiser, Lewis, whose opinion as to total damages was $45,750.00. Mr. Bauer's excluded evidence totaled damages at $354,558.47.

There is obviously a considerable variation between the values placed on the property by the appellant and appellee in this case. It appears that the only testimony considered by the district court valued the property condemned, at a highest and best use, for agricultural and recreational purposes and future development as rural home sites or industrial use; such appraisal was made by the Authority's witness, who admitted he made no on-site inspection of the property but had merely flown over it.

■ Everything which affects the market value of the land itself, having due regard for past and probable future injuries, may be accurately reflected by ascertaining the difference in value, and it is proper to admit evidence upon all matters which tend to increase or diminish the present market value for the fact finder's consideration. *State v. Carpenter*, 89 S.W.2d at 198.

■ In considering the measure of damages attributable to appellant's remaining property, the use to which the condemnor proposes to devote the property taken must be considered in ascertaining the damages to the remainder area; the condemnee is entitled to consideration of the damage which the condemnor has a right to inflict although it cannot be assumed that the property will be put to its most damaging use. *City of Pearland v. Alexander*, 483 S.W.2d 244 (Tex.1972).

■ Appellant did more than simply introduce evidence of comparable sales of pipeline rights-of-way. If that had been his only evidence, then we might be inclined to agree it would have been insufficient to warrant reversal. However, appellant also established the existence of a pipeline corridor by showing the existing pipelines in place and plans to encourage additional pipeline sales. Both Bauer and Clinkscales testified that the highest and best use of the area they identified as a "pipeline corridor" was for the sale of pipeline easements. Such testimony was presented in addition to evidence of comparable sales.

The owner of condemned land is entitled to have the fact finder consider, in determining its market value, the highest and best use to which the land is adaptable. *Graddy*, 318 S.W.2d at 948. Appellant was deprived of this right in the lower court. Although the trial court was not compelled to find the value is as appellant presented it, the court should at least have considered appellant's evidence.

In the instant case, appellant Bauer offered testimony that the highest and best

use of the land in question was the sale of pipeline easements in his "pipeline corri-dor." He showed that the corridor was well-defined,[2] and he offered testimony re-

**2.** Bauer's proposed pipeline corridor with location and date of easement acquisition are as follows:

(Not Drawn to Scale)

## BAUER'S (PIPELINE) CORRIDOR

1) Big Three, Inc. Pipeline;   4-15-80

2) FM 1593

3) Houston Pipeline   3-22-58

4) Pt. Comfort & N. Ry.   6-18-48

5) H-frame elect. trans. line

6) Lone Star (Enserch) Pipeline   2-28-80

7) Arco Pipeline   9-21-81

* 8) LNRA water pipeline   12-01-81

9) Single pole elect. trans. line

* Easement at issue.

garding the value of the condemned land by showing what he and his neighbor received for the sale of other pipeline easements to private companies.

Instead of accepting all this evidence and making his independent fact finding of the value of the condemned land, the trial court specifically refused to consider the testimony offered by Bauer. Bauer's right to have the fact finder consider the land's highest and best use in determining its market value was thus denied. We find therefore, that the trial court committed error which was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. *Gomez Leon v. State*, 426 S.W.2d 562 (Tex.1968); *Fluellen v. Young*, 664 S.W.2d 776 (Tex.App.—Corpus Christi 1983, no writ); TEX.R.CIV.P. 434.

The judgment of the trial court is REVERSED and the cause is REMANDED for a new trial.