# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-18-00510-CV

---

**Joe Behrens, Appellant**

**v.**

**WTG Gas Transmission Company, Appellee**

---

### FROM THE 452ND DISTRICT COURT OF MCCULLOCH COUNTY
### NO. 2015151, THE HONORABLE ROBERT R. HOFMANN, JUDGE PRESIDING

---

## NO. 03-18-00511-CV

---

**Earl Behrens and Grace Behrens, Appellants**

**v.**

**WTG Gas Transmission Company, Appellee**

---

### FROM THE 452ND DISTRICT COURT OF MCCULLOCH COUNTY
### NO. 2015155, THE HONORABLE ROBERT R. HOFMANN, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

In these appeals, Joe Behrens and Earl and Grace Behrens challenge the trial court's

orders in their respective condemnation proceedings instituted by WTG Gas Transmission

Company (WTG). Because these appeals raise common issues, we consider them together. We will affirm the trial court's orders.

## BACKGROUND

Joe Behrens and Earl and Grace Behrens own adjacent tracts of land in McCulloch County. Joe's property is 282.52 acres and Earl and Grace's property is 106.142 acres. WTG desired to construct a six-inch pipeline that would cross both pieces of property. WTG petitioned the district court to condemn a 30-foot wide strip of land for a pipeline easement on the eastern boundary of each of Joe's and Earl and Grace's properties. The easements sought were 1,855 feet in length on Joe's property and 880 feet in length on Earl and Grace's property. The land that WTG sought to condemn had a surface area of 1.282 acres of Joe's property and .607 acres of Earl and Grace's property. Additionally, WTG sought temporary easements on additional acreage on both Joe's and Earl and Grace's properties for a construction site.

The district court appointed three special commissioners to determine the value of the land that WTG sought to condemn. *See* Tex. Prop. Code § 21.014. Following a consolidated hearing, the commissioners awarded $436,780 to Joe and $159,213 to Earl and Grace. WTG objected to both awards as excessive. After setting the matters for trial, WTG deposited the amounts awarded in the court's registry. Joe and Earl and Grace withdrew the deposited funds, thereby acknowledging WTG's right to condemnation. *See Coastal Indus. Water Auth. v. Celanese Corp. of Am.*, 592 S.W.2d 597, 599 (Tex. 1979) (landowner who withdraws award from registry may continue to litigate issue of compensation but is prevented from litigating right to take property). WTG's petitions for condemnation against Joe and Earl and Grace were consolidated for trial.

2

At trial, Joe and Earl and Grace designated David R. Bolton as an expert witness to provide his opinions regarding the market value of the Behrens' properties, the highest and best use before and after the taking, comparable sales, paired sales, and other factors affecting value. Bolton determined that the highest and best use of Joe's and Earl and Grace's properties was "agricultural and rural recreational/residential with sand mining potential." Bolton testified that the market value of Joe's property was $5,300 per acre and that the market value of Earl and Grace's property was $6,000 per acre. Bolton opined that the combined market value of Joe's and Earl and Grace's properties before the taking was $2,135,000. Bolton estimated that, after the taking, the market value of the acreage not in the easement was diminished by 15%, and the market value of the acreage within the easement was diminished by 90%. Bolton calculated a combined after-taking value of $1,805,000 for both properties. Thus, Bolton opined that $330,000 would adequately compensate Joe and Earl and Grace for the taking. Bolton added an additional $183 as damages for the temporary easement for a total compensation value of $330,183.

WTG's expert Justin Bierschwale testified that only the 1.282 acres of Joe's property within the pipeline easement were damaged by the taking. He opined that the remaining 281.238 acres were not damaged and retained their full market value of $3,900 per acre. As for the 1.282 acres within the pipeline easement, Bierschwale testified that the market value of that property was diminished by $4,500 (approximately 90%). To that damages number, Bierschwale added $1,108 as compensation for the temporary construction easement and $2,900

as cost to cure,[1] for a "rounded" total compensation amount of $9,000. Bierschwale testified that, similarly, only the .607 acres of Earl and Grace's property within the pipeline easement was damaged by the taking. He opined that the remaining 105.535 acres were not damaged and retained their full market value of $4,250 per acre. As for the .607 acres within the pipeline easement, Bierschwale testified that market value of that property was diminished by $2,322 (approximately 90%). To that damages number, Bierschwale added $430 as compensation for the temporary construction easement and $1,100 as cost to cure, for a "rounded" total compensation amount of $4,000.

After the hearing, the trial court made its own calculations of the amounts to award Joe and Earl and Grace to compensate them for the taking. The trial court assigned before-taking per-acre market values of $3,900 for Joe's property and $4,250 for Earl and Grace's property. The trial court determined that 20% of each of Joe's and Earl and Grace's properties was damaged by the taking and that of that 20%, the market value of the acreage not within the easement was diminished by 10% and the market value of the acreage within the easement was diminished by 90%.[2] Based on these findings, the trial court calculated that $33,046 would compensate Joe for the diminution in the market value of his property caused by the taking and that $13,824 would compensate Earl and Grace for the diminution in the market value of their property caused by the taking. To those damages numbers, the trial court added

---

[1] Bierschwale testified that the "cost to cure" represented compensation for two years of lost income from grazing leases resulting from having to keep the property within the easement free of grazing animals for two years in order to allow for reestablishment of the grass.

[2] The trial court rejected Bierschwale's opinion that, after the taking, only the acres within the easement itself had a diminished market value.

the same amounts that Bierschwale testified would compensate Joe and Earl and Grace for both the temporary construction easements and the cost to cure.

The trial court rendered judgments that Joe receive a total amount of compensation for the taking of $37,054.30 and that Earl and Grace receive a total amount of compensation for the taking of $15,354.40. The trial court filed combined findings of fact and conclusions of law for both cases. Joe and Earl and Grace filed motions for new trial, which were overruled by operation of law. Joe and Earl and Grace then perfected these appeals, each bringing one issue challenging the trial court's determination of the damage to the value of their property caused by the taking.[3]

## DISCUSSION

We begin by reviewing the standard for valuing a pipeline easement in a condemnation proceeding. Compensation for land taken by eminent domain is measured by the fair market value of the land at the time of the taking. *City of Harlingen v. Estate of Sharboneau*, 48 S.W.3d 177, 183 (Tex. 2001); *Heddin v. Delhi Gas Pipeline Co.*, 522 S.W.2d 886, 888 (Tex. 1975); *Fuller v. State*, 461 S.W.2d 595, 598 (Tex. 1970). The general rule for determining fair market value is the before-and-after rule, which requires measuring the difference in the value of the land immediately before and immediately after the taking. *Callejo v. Brazos Elec. Power Coop., Inc.*, 755 S.W.2d 73, 76 (Tex. 1988); *City of Pearland v. Alexander*, 483 S.W.2d 244, 247 (Tex. 1972). When, as here, only part of the land is taken for an easement, a partial taking occurs. *Westgate, Ltd. v. State*, 843 S.W.2d 448, 456 (Tex. 1992). In this situation, the before-and-after rule still applies, but compensation is measured by the market value of the part taken plus any

---

[3] Neither Joe nor Earl and Grace challenge the temporary easement or cost to cure components of the trial court's award.

5

diminution in value to the remainder of the land. *Id.*; *State v. Meyer*, 403 S.W.2d 366, 371 (Tex. 1966); *City of Austin v. Cannizzo*, 267 S.W.2d 808, 812 (Tex. 1954).

The factfinder may consider the highest and best use to which the land taken can be adapted. *Bauer v. Lavaca-Navidad River Auth.*, 704 S.W.2d 107, 109 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.). The existing use of the land, in this case agricultural and residential, is its presumed highest and best use, but the landowner can rebut this presumption by showing a reasonable probability that when the taking occurred, the property was adaptable and needed or would likely be needed in the near future for another use. *See McAshan v. Delhi Gas Pipeline Corp.*, 739 S.W.2d 130, 131 (Tex. App.—San Antonio 1987, no writ).

Texas law permits landowners to introduce testimony that the condemned land is a self-sufficient separate economic unit, independent from the remainder of the parent tract with a different highest and best use and different value from the remaining land. *See State v. Windham*, 837 S.W.2d 73, 76 (Tex. 1992); *Bauer*, 704 S.W.2d at 109. In that situation, the market value of the severed land can be determined without reference to the remaining land. *See Windham*, 837 S.W.2d at 76; *Bauer*, 704 S.W.2d at 109. But when the portion of the land taken by eminent domain cannot be considered as a separate economic unit, the before-and-after method requires determining market value by evaluating the taken land as a proportionate part of the remaining land. *See Windham*, 837 S.W.2d at 76.

In valuing the loss in value of the remainder property in a condemnation case, the factfinder is not entitled to depart from the range of value admitted as evidence. *See State v. Huffstutler*, 871 S.W.2d 955, 959 (Tex. App.—Austin 1994, no writ) ("In a condemnation case, the jury is allowed to set the value at any amount between the lowest and highest values the expert witnesses put in evidence."); *see also Pleasant v. Bradford*, 260 S.W.3d 546, 560 (Tex.

6

App.—Austin 2008, pet. denied) (damages award not arbitrary simply because it does not match up precisely with figures presented by expert witnesses); *Parallax Corp., N.V. v. City of El Paso*, 910 S.W.2d 86, 91-92 (Tex. App.—El Paso 1995, writ denied) (jury can depart from expert valuations if other evidence presented at trial is sufficient for jury to do so).

In the present case, the trial court found that, before the taking, the entire 282.52 acres of Joe's property was worth $4,950 per acre.[4] The court found that 20% of Joe's property—56.504 acres that includes 1.282 acres within the pipeline easement—was damaged as a result of the condemnation. The court determined that the value of that portion of the 56.504 acres that was not within the pipeline easement—55.222 acres—was reduced by 10% as a result of the taking.[5] Thus, the court calculated that the value of those 55.222 acres was reduced by (55.222)($4,950)(.10)=$27,334.89. The court found that the value of the portion of the 56.504 acres that was within the pipeline easement—1.282 acres—was reduced by 90% as a result of the taking.[6] Thus, the court calculated that the value of those 1.282 acres was reduced by (1.282)($4,950)(.9)=$5,711.31. The court awarded Joe the sum of these two partial damages calculations—$33,046.30—as damages to the value of his property resulting from the taking.

---

[4] The basis for the trial court's damages calculations can be found in Exhibit D to the court's findings of fact and conclusions of law, which is the court's handwritten mathematical damage calculations, and in the reporter's record of the court's hearing on a motion for entry of an order, in which the parties discuss, and the court explains, the court's method for calculating damages to the property caused by the taking.

[5] The court determined that the value of the 55.222 acres before the taking was (55.222)($4,950)=$273,348.90. The court determined that after the taking, the same acreage was valued at (55.222)($4,950)(.90)=$246,014.01.

[6] The court determined that the value of the 1.282 acres before the taking was (1.282)($4,590)=$6,345.90. The court determined that after the taking, the same acreage was valued at (1.282)($4,950)(.10)=$634.59.

The trial court found that, before the taking, the entire 106.142 acres of Earl and Grace's property was worth $5,300 per acre. The court found that 20% of Earl and Grace's property—21.228 acres that includes 0.607 acres within the pipeline easement—was damaged as a result of the taking. The court determined that the value of that portion of the 21.228 acres that was not within the pipeline easement—20.621 acres—was reduced by 10% as a result of the taking.[7] Thus, the court calculated that the value of those 20.621 acres was reduced by $(20.621)(\$5,300)(.10)=\$10,929.13$. The court found that value of the portion of the 20.621 acres that was within the pipeline easement—0.607 acres—was reduced by 90% as a result of the taking.[8] Thus, the court calculated that the value of those 0.607 acres was reduced by $(0.607)(\$5,300)(.90)=\$2,895.39$. The court awarded Earl and Grace the sum of these two partial damages calculations—$13,824.40—as damages to the value of their property resulting from the taking.

In their respective appeals, Joe, Earl, and Grace assert that the trial court's damages calculations reflect "a 20% damage to all of [their] property, with an additional 90% discount to the severed lands, and an additional 10% discount of the damage award to the remainder." They also argue that the trial court erred when it took "an additional discount of 10% to the damages to the remaining property after the property had already been reduced by 20%." This argument misapprehends the trial court's damages calculation. Rather than find that "all of [their] property" was damaged by 20%, the court found that 20% of each of Joe's and Earl

---

[7] The court determined that the value of the total 20.621 acres before the taking was $(20.621)(\$5,300)=\$109,291.30$. The court determined that after the taking, the same acreage was valued at $(20.621)(\$5,300)(.90)=\$98,362.17$.

[8] The court determined that the value of the 0.607 acres before the taking was $(0.607)(\$5,300)=\$3,217.10$. The court determined that after the taking, the same acreage was valued at $(0.607)(\$5,300)(.10)=\$321.71$.

and Grace's properties was damaged 10%, except for the acreage included in the pipeline easement, which was damaged 90%. The trial court's damages award reflects that it was compensating Joe for a 10% reduction in the value of the 55.222 acres that it found was 10% damaged—(55.222)($4,950)(.10)=$27,334.89—and for a 90% reduction in the value of the 1.282 acres it found was 90% damaged—(1.282)($4,950)(.90)=$5,711.31. The damages award similarly reflects that it was compensating Earl and Grace for a 10% reduction in the value of the 20.621 acres that it found was 10% damaged—(20.621)($5,300)(.10)=$10,929.13—and for a 90% reduction in the value of the .607 acres it found was 90% damaged—(.607)($5,300)(.90)= $2,895.39. The trial court did not, as Joe and Earl and Grace maintain, find that the remainder of their property was damaged 20% and then "appl[y] an additional discount of 10% which discount was not supported by any evidence presented."

The elements of the trial court's damages calculations were each supported by sufficient evidence in the record. Expert testimony valued Joe's land before the taking at between $3,900 per acre (Bierschwale) and $5,300 per acre (Bolton) and valued Earl and Grace's land before the taking at between $4,250 per acre (Bierschwale) and $6,000 per acre (Bolton). The trial court found a pre-taking value for Joe's property of $4,950 per acre and a pre-taking value for Earl and Grace's property of $5,300. There was expert testimony from Bierschwale that, other than the acres comprising the pipeline easement, the value of Joe's and Earl and Grace's properties was not damaged by the taking. There was expert testimony from Bolton that the value of the acres not within the pipeline easement was reduced by 15% and that the value of the acres within the pipeline easement was reduced by 90%. The trial court found that a portion of Joe's and Earl and Grace's properties (20%) was damaged by the taking and, within that portion the acreage outside the pipeline easement had a 10% reduction in value and the acreage

9

within the pipeline easement had a 90% reduction in value. The trial court's findings regarding the amount of acreage damaged as a result of the taking, as well as the magnitude of that damage, is within the range of, and supported by, the expert testimony. We overrule Joe's and Earl and Grace's appellate issues.

## CONCLUSION

Having overruled the appellate issues brought by Joe and by Earl and Grace, we affirm the trial court's judgments in each cause.

_____
Chari L. Kelly, Justice

Before Chief Justice Rose, Justices Kelly and Smith

Affirmed

Filed: July 17, 2019