TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-05-00329-CV






Appellants, Robert L. Owens, Jr. and Sylvia Lee Owens//Cross-Appellees, Michael Ousey,
Kirsten Ousey, Robert F. West and Elizabeth West


v.


Appellees, Michael Ousey, Kirsten Ousey, Robert F. West and Elizabeth West//Cross-Appellants, Robert L. Owens, Jr. and Sylvia Lee Owens






FROM THE DISTRICT COURT OF HAYS COUNTY, 207TH JUDICIAL DISTRICT

NO. 03-1778, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING





O P I N I O N


 This is an appeal from a final judgment granting a mandatory permanent injunction
to enforce a restrictive covenant. The injunction compelled Robert L. Owens, Jr. and Sylvia Lee
Owens to remove a mobile home from a lot they owned adjacent to lots owned by Michael and
Kirsten Ousey and Robert and Elizabeth West. The Owenses appeal, contending that the injunction
purported to enforce a restrictive covenant that had expired in 2001, that purported 2003
"amendments" to "extend" the covenant were void, and that the covenant cannot be enforced under
an implied negative reciprocal easement theory. Appellees bring a cross-appeal contending that the
district court erred in refusing to award them statutory and common-law damages for the Owenses'
breaches of restrictive covenants both on the lot in question and on an adjacent Owens-owned lot
where the Owenses had initially placed the mobile home. For reasons explained below, we affirm
in part, reverse in part, render in part, and remand in part. 

 

BACKGROUND

 Appellees and the Owenses own adjoining properties in a residential, unincorporated
area of Hays County near San Marcos. The Owenses own two adjoining lots, a .23-acre lot located
to the immediate west of, and sharing a common boundary with, a .715-acre lot. The Owenses' lots
are located at essentially the southeast corner of three lots owned by appellees. Along the north and
west boundaries of the Owenses' .23-acre lot are two lots totaling roughly 15 acres owned by the
Ouseys. The Wests own a .716-acre lot bordering the Owenses' .715-acre lot to the north and one
of the Ouseys' lots to the east. (1) 

 The deeds to both of the Owenses' lots contain restrictive covenants prohibiting the
placement of mobile homes on the property. The deed to the .715-acre lot, executed in 1976,
specifies that the restrictive covenants:


shall be in full force and effect for a period of twenty-five years. However, any
restrictive covenant or covenants may be renewed at the end of said 25 year period,
or may, at any time, be altered amended or cancelled by a majority vote of the owners
of the property, each lot, whether owned by one or more persons, having and being
entitled to one vote, on any question of alteration, amendment of [sic] cancellation
of any restriction. (2)

 

 

By contrast, the deed to the .23-acre lot, executed in 1984, does not specify a time limit or term for
its restrictive covenants.

 In October 2003, the Owenses placed a mobile home on the .23-acre lot. Appellees
notified the Owenses of their objection to the placement of the mobile home on that lot. On October
22, 2003, appellees voted to "amend" and "extend" the deed restrictions prohibiting the placement
of a mobile home on the .715-acre lot. On the same date, appellees notified the Owenses of this
action. Thereafter, on or about November 3, 2003, the Owenses moved the mobile home to their
.715-acre lot. On or about November 6, 2003, appellees recorded a document entitled
"Amendment/Extension of Deed Restrictions," pertaining to the Owenses' .715-acre lot, in the real
property records of Hays County. 

 After the Owenses refused to remove the mobile home from their .715-acre lot,
appellees sued for damages and a mandatory permanent injunction requiring the Owenses to remove
the mobile home from their property. Appellees asserted claims that (1) the Owenses violated the
restrictive covenants applicable to the .23-acre lot by placing a mobile home there from on or about
October 1 to November 4, 2003; (2) the Owenses violated the restrictive covenants applicable to the
.715-acre lot by moving the mobile home there and refusing to remove it; and alternatively, (3) the
placement of the mobile home on either lot violated implied reciprocal negative easements
applicable to both lots. Appellees also alleged that the Owenses' actions constituted a nuisance. The
Owenses counter-claimed for a declaratory judgment that the "Amendment/Extension of Deed
Restrictions" that appellees filed is void and of no force or effect. The case was tried to the court
on mostly stipulated facts.

 The district court rendered judgment that:



1. The Owenses violated the deed restrictions applicable to their .23-acre lot (those without a
specified term or duration) by placing a mobile home there between October 1 and
November 3, 2003.

 

2. The Owenses violated deed restrictions applicable to their .715-acre lot (those effective "for
a period of twenty-five years") by placing a mobile home on that lot on November 3, 2003,
and refusing to remove it. The court granted a mandatory injunction compelling the
Owenses to move the mobile home off their property within thirty days after the judgment
was signed. 


3. "The Court finds for [the Owenses] as to [appellees'] claims of nuisance . . . and denies
[appellees'] claim." 


4. "[Appellees] not recover actual damages or any other kind of damages or interest from [the
Owenses] and [the Owenses] not recover actual damages or any other kinds of damages from
[appellees]." 


5. Neither party would be awarded attorney's fees but, in the event of an appeal, each party
would recover appellate attorney's fees if successful. 



 The district court subsequently entered findings of fact and conclusions of law. 
Among other facts, the court found that appellees had proven statutory damages as to the Owenses'
.23-acre lot of $6,000 and $99,000 as to the Owenses' .715-acre lot. See Tex. Prop. Code Ann.
§ 202.004(c) (West 2007) (providing that a court "may award civil damages for the violation of a
restrictive covenant in an amount not to exceed $200 for each day of the violation"). It also found
that the Wests had incurred loss of value to their property of $36,000 and that the Ouseys had
incurred a loss of $60,000. However, the district court concluded that "[i]n accordance with the
Court's discretion," appellees were "not entitled to recover damages" or interest. 

 The district court also found that appellees had incurred $14,024.70 in attorney's fees
through trial, that the Owenses had incurred $20,000 in attorney's fees through trial, and that each
party would incur $5,000 and $3,000 in attorney's fees on appeal to the court of appeals and the
supreme court, respectively. The court concluded that "[i]n accordance with the Court's discretion,"
neither party was entitled to recover their attorney's fees through judgment, but each party could
recover their appellate attorney's fees if successful. 


ANALYSIS

 The Owenses bring eight issues on appeal. They do not challenge the judgment that
they violated the restrictive covenants encumbering their .23-acre lot (where they initially placed the
mobile home) but assert that the district court erred in rendering judgment that they violated
restrictive covenants encumbering their .715-acre lot and in awarding mandatory injunctive relief. 
In their first issue, the Owenses argue that the restrictions encumbering their .715-acre lot expired
by their terms in August 2001 and could not be "amended" or "extended" by appellees' actions over
two years after that date. Similarly, the Owenses contend in their eighth issue that the district court
erred in refusing to grant their request for a declaration that appellees' purported "amendment" or
"extension" of the deed restrictions is void. In their second and seventh issues, the Owenses assert
that appellees lack standing to enforce the restrictive covenants encumbering their .715-acre lot. The
Owenses' remaining issues challenge the applicability of the implied negative restrictive easement
theory on several grounds, including their contention that this theory cannot apply when, as here, the
subject property is covered by express deed restrictions that had expired by their terms. 

 Appellees bring a cross-appeal asserting that the district court abused its discretion
in denying their claims for statutory and common-law damages and attorney's fees. They also
complain that the district court abused its discretion in awarding the Owenses conditional appellate
attorney's fees. 


The Owenses' appeal


 Applicability of express deed restriction

 We consider first whether an express deed restriction applied to the Owenses' .715-acre lot. When construing restrictive covenants, we apply the general rules of contract construction. 
Pilarcik v. Emmons, 966 S.W.2d 474, 478 (Tex. 1998). We examine the covenants as a whole in
light of the circumstances present when the parties entered into the agreement. Id. Our primary
concern is to ascertain and give effect to the true intention of the parties as expressed in the
instrument. See Gulf Ins. Co. v. Burns Motors, 22 S.W.3d 417, 424 (Tex. 2000). Like other
questions of law, we review a trial court's construction of restrictive covenants de novo. Raman
Chandler Props., L.C. v. Caldwell's Creek Homeowners Ass'n, 178 S.W.3d 384, 390
(Tex. App.--Fort Worth 2005, pet. denied); City of Pasadena v. Gennedy, 125 S.W.3d 687, 692
(Tex. App.--Houston [1st Dist.] 2003, pet. denied). 

 The deed to the Owenses' .715-acre lot contains restrictive covenants prohibiting
"noxious or other offensive activity," structures other than "one single family dwelling unit not to
exceed two stories in height," any "mobile home, house trailer, tent, shack, garage or other out
building [that] shall be used for residential purposes," or moving a dwelling situated outside the lot
onto the lot or allowing it to remain there. It further provided that these restrictions:

 shall be in full force and effect for a period of twenty-five years. 
However, any restrictive covenant or covenants may be renewed at
the end of said 25 year period, or may, at any time, be altered,
amended or cancelled by a majority vote of the owners of the
property, each lot . . . having and being entitled to one vote, on any
question of extension of said restrictions, and on any question of
alteration, amendment of [sic] cancellation of any restriction.


 

 The deed was executed on October 22, 1976. Under its terms, the restrictive
covenants were to remain "in full force and effect for a period of 25 years," or only until October 22,
2001. Appellees contend that the "amendments" and "extension" of the deed restrictions that they
voted to approve on October 22, 2003, and recorded on or about November 3--two years after the
25-year period had expired--made the restrictions effective through the relevant period. The
Owenses contend that because the deed restrictions expired by their terms in October 2001, appellees
necessarily could not have "extended" or "amended" the restrictions two years thereafter. Appellees
point to the provisos that "any restrictive covenant or covenants may be renewed at the end of said
25 year period, or may, at any time, be altered, amended or cancelled." (Emphasis added.) They
urge that these terms allow them to amend the restrictions "at any time," even two years after the
"end of said 25 year period." We agree with the Owenses. 

 We must construe restrictive covenants as a whole, give effect to every sentence,
clause, and word of a covenant, and avoid constructions that would render parts of the covenant
superfluous or inoperative. See City of San Antonio v. City of Boerne, 111 S.W.3d 22, 29
(Tex. 2003). Appellees' construction, while literally supported by the words "at any time" if read
in isolation, is inconsistent with the deed restrictions as a whole and renders the explicit 25-year term
superfluous. Read in its proper context, the provision necessarily means that the restrictions may
be amended "at any time" while they remain in effect. Similarly, the provision that the restrictions
may be extended "at the end of said 25 year period" does not contemplate a time two years after the
end of that period. (Emphasis added). The fact that the property code requires restrictive covenants
to be "liberally construed," see Tex. Prop. Code Ann. § 202.003(a) (West 2007), does not change
our analysis--even under a liberal construction, the plain language of the deed states that the
restrictive covenants are in effect for a 25-year period. 

 For these reasons, we conclude that the express restrictive covenants in the deeds to
the Owenses' .715-acre lot had expired long before October 2003, when the Owenses moved a
mobile home onto the property, and that appellees' purported "extensions" and "amendments" to the
restrictions were void and ineffective. We sustain the Owenses' first and eighth issues, and need not
reach their second and seventh issues, which concern appellees' standing to enforce these
restrictions. 


 Implied reciprocal negative easement 

 In the alternative, appellees plead that even if the express deed restrictions had
expired, the Owenses were still barred from placing a mobile home on their property under an
implied reciprocal negative easement theory. An implied reciprocal negative easement may arise
or operate when:

 an owner of real property subdivides it into lots and sells a substantial number of
those lots with restrictive covenants designed to further the owner's general plan or
scheme of development. The central issue is usually the existence of a general plan
of development. The lots retained by the owner, or lots sold by the owner from the
development without express restrictions to a grantee with notice of the restrictions
in the other deeds, are burdened with what is variously called an implied reciprocal
negative easement, or an implied equitable servitude, or negative implied restrictive
covenant, that they may not be used in violation of the restrictive covenants
burdening the lots sold with the express restrictions.


Evans v. Pollock, 796 S.W.2d 465, 466 (Tex. 1990). The Owenses challenge the application of this
principle on several grounds, (3) including that an implied reciprocal negative easement cannot arise
where, as here, the subject property was sold with express restrictions that are the same as those
allegedly implied. We agree with the Owenses.

 As the supreme court observed in Evans, the implied reciprocal negative easement
doctrine applies to enforce restrictions against lots "retained by the owner, or . . . sold without
express restrictions to a grantee with notice of the restrictions in the other deeds." Id. (Emphasis
added). The reason courts imply restrictions on these lots is to give effect to the general
development scheme intended by the grantor. Id. But here, the deed to the Owenses' .715-acre lot
contains express restrictions that reflect the grantor's intent. We conclude that no restrictions may
be implied in the face of the express deed restrictions. We sustain the Owenses' third issue and need
not reach their remaining issues. 

 In light of our disposition of the Owenses' issues, we must reverse the portions of the
district court's judgment holding that the Owenses violated a restrictive covenant encumbering their
.715-acre lot and granting injunctive relief compelling them to move the mobile home off this lot. 
The Owenses are also entitled to a declaration that appellees' post-expiration "extension" or
"amendment" of the restrictive covenants applicable to the .715-acre lot is void. 

 As the Owenses are now the prevailing party on their declaratory judgment claim, we
will remand the issue of their attorney's fees to afford the district court the opportunity to exercise
its discretion to decide whether to award them. See Tex. Civ. Prac. & Rem. Code Ann. § 37.009
(West 1997); McMillin v. State Farm Lloyds, 180 S.W.3d 183, 211 (Tex. App.--Austin 2005,
pet. denied).


Appellees' Appeal 

 Damages

 In their first issue, appellees complain that the district court abused its discretion in
refusing to award them statutory damages on their claims to enforce the restrictive covenants
applicable to the Owenses' two lots. Section 202.004 of the property code authorizes trial courts to
assess civil damages for the violation of a restrictive covenant for an amount up to $200 per day of
violation. See Tex. Prop. Code. Ann. § 202.004(c). The district court found that appellees had
proven statutory damages of $6,000 from the roughly one-month period in which the Owenses had
placed the mobile home on their .23-acre lot, and $99,000 from the period after the Owenses moved
the mobile home to their .715-acre lot. Section 202.004, however, states that the court "may" award
these damages, see Tex. Prop. Code. Ann. § 202.004(c), and the district court exercised its discretion
not to award appellees any statutory damages. 

 Having held that the restrictive covenants in the deed to the Owenses' .715-acre lot
were no longer in effect when they placed the mobile home on that property, we affirm the district
court's judgment denying appellees statutory damages based on those acts. However, the Owenses
have not challenged the district court's judgment that they violated the restrictive covenants on their
.23-acre lot. The district court chose to exercise its discretion to deny appellees statutory damages
for these violations in the context of rendering a judgment that granted appellees mandatory
injunctive relief compelling them to remove the mobile home from their other lot. Now that we have
reversed that injunction, we believe that the district court should have the opportunity to revisit how
it should exercise its discretion in deciding whether to award appellees statutory damages for the
Owenses' breach of the restrictive covenants on their .23-acre lot. Accordingly, we will remand this
issue to the district court. 

 Appellees also complain that the district court abused its discretion in refusing to
award them common-law damages for the Owenses' breaches of the restrictive covenants. As noted
above, the district court found that appellees had incurred a total of $96,000 in common-law
damages, the Wests incurring $36,000 and the Ouseys $60,000. It did not segregate these damages
between the Owenses breaches of the restrictive covenants on their .23-acre lot versus their .715-acre lot. 

 For the same reasons that they were not entitled to injunctive relief, appellees were
not entitled to damages resulting from the placement of the mobile home on the Owenses' .715-acre
lot. Further, we hold that they were not entitled to any common-law damages regarding either lot
because we agree with the Owenses that there is no evidence to support such an award. The district
court did not hear testimony regarding appellees' common-law damages. Instead, appellees' counsel
sought to "expedite" proceedings by attempting to introduce their own discovery responses as proof
of their common-law damages: 

 

 We also pled for common law damages; that is, loss of market value. And I could
have my clients testify to that. On the other hand, if [counsel for the Owenses] will
permit it, I would simply have the answers to his interrogatories. I know this is a
little irregular, but our answers to his requests for disclosure and--about damages
and our answers to his requests for how we calculated damages, this is what my
people would say if they were to come up here and testify about how they lost at
market value. He may disagree with, you know, what our conclusions are, but I
thought this might expedite matters because this is what I gave you.



 Appellees' counsel presented two exhibits to the district court. The first was a
document purporting to state amounts of statutory and common law damages. Under the heading
"common law damages" the exhibit lists the Wests' decline in fair market value as $36,000 and the
Ouseys' decline in fair market valued as $60,000. The second exhibit was an excerpt from the
Ouseys' response to the Owenses' requests for disclosures concerning their amount and method of
calculating damages. It stated the same common-law damages figures reflected in the first exhibit. 

 The Owenses objected to these exhibits as not probative, relevant or material evidence
of common-law damages. The district court overruled the objections and admitted the exhibits. 
Absent any evidentiary foundation for the conclusions contained in these exhibits, we must agree
with the Owenses that the exhibits provide no evidence of damages. Even if the exhibits were
properly admitted, they provide no evidence of damages. See City of Harlingen v. Estate of
Sharboneau, 48 S.W.3d 177, 182-86 (Tex. 2001) (discussing methods for determining market
value); County of Bexar v. Cooper, 351 S.W.2d 956, 958 (Tex. Civ. App.--San Antonio 1961, no
writ) (holding that "[a] mere conclusion as to market value" is insufficient to show damages to land). 
Consequently, the district court did not abuse its discretion in its ultimate determination not to award
appellees common-law damages. 


 Appellees' attorney's fees

 Appellees also contend that the district court abused its discretion in refusing to award
the $14,024 that it found they had incurred in attorney's fees. Appellees rely on section 5.006 of the
property code, which provides that a trial court "shall allow as to a prevailing party" who asserted
an action based on breach of restrictive covenant "reasonable attorney's fees." Tex. Prop. Code Ann.
§ 5.006(a) (West 2003) (emphasis added). Appellees are no longer a prevailing party on their claims
that the Owenses breached restrictive covenants encumbering their .715-acre lot. However, they
remain a prevailing party on their claims concerning the Owenses' .23-acre lot. Accordingly, we
remand to the district court to segregate and award the attorney's fees relating to this claim. See
Varner v. Cardenas, No.06-0212, 2007 Tex. LEXIS 189, at *1 (Tex. Mar. 2, 2007); Tony Gullo
Motors I, L.P. v. Chapa, 212 S.W.3d 299, 314 (Tex. 2006) (remanding because evidence of
attorney's fees for entire case is some evidence of what amount of segregated fees should be). 


 The Owenses' appellate attorney's fees

 Finally, appellees contend that the district court erred as a matter of law in awarding
the Owenses appellate attorney's fees conditioned on their success on appeal. They observe that
under the court's original judgment, the Owenses had no statutory or contractual basis for an
attorney's fees award. The Owenses do not dispute this argument. We reverse this award but
remand the issue to the district court for consideration alongside the Owenses' entitlement to
attorney's fees under their declaratory judgment action. 


CONCLUSION

 We reverse the portions of the district court's judgment holding that the Owenses'
.715-acre lot was encumbered by restrictive covenants past August 2001, that they violated such
restrictions by placing a mobile home on that lot, and enjoining them to remove the mobile home
from that property. We render judgment declaring that appellees' 2003 post-expiration "extensions"
or "amendments" to these deed restrictions are void and ineffective. To enable the district court to
exercise its discretion in light of our ruling, we remand the issues of (1) whether the Owenses should
be awarded attorney's fees under their declaratory judgment claim, including appellate attorney's
fees, and (2) whether appellees should be awarded their statutory damages relating to the Owenses'
breach of restrictive covenants encumbering their .23-acre lot. We affirm the district court's
judgment denying appellees recovery of common-law damages. 


__________________________________________

 Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed in part; Reversed and Rendered in part; Reversed and Remanded in part

Filed: June 8, 2007


APPENDIX A







1. A survey plat illustrating the locations of the lots is attached as Appendix A.
2. The parties dispute whether the deed clearly identifies "owners of the property" authorized 
to amend the restrictions. Ultimately, we need not reach that issue.
3. It is unclear whether the district court's judgment is also predicated on this theory. The
court did not explicitly address this theory, although it made fact findings that appear possibly to
address some but not all of its elements. To avoid deemed findings, the Owenses requested
additional fact findings regarding each element, which the district court declined to make. However,
because both parties briefed the issue, and because we ultimately conclude that the implied reciprocal
easement theory cannot apply here, we proceed to address it.