# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00329-CV

**Appellants, Robert L. Owens, Jr. and Sylvia Lee Owens//Cross-Appellees, Michael Ousey, Kirsten Ousey, Robert F. West and Elizabeth West**

**v.**

**Appellees, Michael Ousey, Kirsten Ousey, Robert F. West and Elizabeth West//Cross-Appellants, Robert L. Owens, Jr. and Sylvia Lee Owens**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 207TH JUDICIAL DISTRICT NO. 03-1778, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING

## O P I N I O N

This is an appeal from a final judgment granting a mandatory permanent injunction to enforce a restrictive covenant. The injunction compelled Robert L. Owens, Jr. and Sylvia Lee Owens to remove a mobile home from a lot they owned adjacent to lots owned by Michael and Kirsten Ousey and Robert and Elizabeth West. The Owenses appeal, contending that the injunction purported to enforce a restrictive covenant that had expired in 2001, that purported 2003 "amendments" to "extend" the covenant were void, and that the covenant cannot be enforced under an implied negative reciprocal easement theory. Appellees bring a cross-appeal contending that the district court erred in refusing to award them statutory and common-law damages for the Owenses' breaches of restrictive covenants both on the lot in question and on an adjacent Owens-owned lot

where the Owenses had initially placed the mobile home. For reasons explained below, we affirm in part, reverse in part, render in part, and remand in part.

**BACKGROUND**

Appellees and the Owenses own adjoining properties in a residential, unincorporated area of Hays County near San Marcos. The Owenses own two adjoining lots, a .23-acre lot located to the immediate west of, and sharing a common boundary with, a .715-acre lot. The Owenses' lots are located at essentially the southeast corner of three lots owned by appellees. Along the north and west boundaries of the Owenses' .23-acre lot are two lots totaling roughly 15 acres owned by the Ouseys. The Wests own a .716-acre lot bordering the Owenses' .715-acre lot to the north and one of the Ouseys' lots to the east.[1]

The deeds to both of the Owenses' lots contain restrictive covenants prohibiting the placement of mobile homes on the property. The deed to the .715-acre lot, executed in 1976, specifies that the restrictive covenants:

> shall be in full force and effect for a period of twenty-five years. However, any restrictive covenant or covenants may be renewed at the end of said 25 year period, or may, at any time, be altered amended or cancelled by a majority vote of the owners of the property, each lot, whether owned by one or more persons, having and being entitled to one vote, on any question of alteration, amendment of [sic] cancellation of any restriction.[2]

---

[1] A survey plat illustrating the locations of the lots is attached as Appendix A.

[2] The parties dispute whether the deed clearly identifies "owners of the property" authorized to amend the restrictions. Ultimately, we need not reach that issue.

2

By contrast, the deed to the .23-acre lot, executed in 1984, does not specify a time limit or term for its restrictive covenants.

In October 2003, the Owenses placed a mobile home on the .23-acre lot. Appellees notified the Owenses of their objection to the placement of the mobile home on that lot. On October 22, 2003, appellees voted to "amend" and "extend" the deed restrictions prohibiting the placement of a mobile home on the .715-acre lot. On the same date, appellees notified the Owenses of this action. Thereafter, on or about November 3, 2003, the Owenses moved the mobile home to their .715-acre lot. On or about November 6, 2003, appellees recorded a document entitled "Amendment/Extension of Deed Restrictions," pertaining to the Owenses' .715-acre lot, in the real property records of Hays County.

After the Owenses refused to remove the mobile home from their .715-acre lot, appellees sued for damages and a mandatory permanent injunction requiring the Owenses to remove the mobile home from their property. Appellees asserted claims that (1) the Owenses violated the restrictive covenants applicable to the .23-acre lot by placing a mobile home there from on or about October 1 to November 4, 2003; (2) the Owenses violated the restrictive covenants applicable to the .715-acre lot by moving the mobile home there and refusing to remove it; and alternatively, (3) the placement of the mobile home on either lot violated implied reciprocal negative easements applicable to both lots. Appellees also alleged that the Owenses' actions constituted a nuisance. The Owenses counter-claimed for a declaratory judgment that the "Amendment/Extension of Deed Restrictions" that appellees filed is void and of no force or effect. The case was tried to the court on mostly stipulated facts.

3

The district court rendered judgment that:

1. The Owenses violated the deed restrictions applicable to their .23-acre lot (those without a specified term or duration) by placing a mobile home there between October 1 and November 3, 2003.

2. The Owenses violated deed restrictions applicable to their .715-acre lot (those effective "for a period of twenty-five years") by placing a mobile home on that lot on November 3, 2003, and refusing to remove it. The court granted a mandatory injunction compelling the Owenses to move the mobile home off their property within thirty days after the judgment was signed.

3. "The Court finds for [the Owenses] as to [appellees'] claims of nuisance . . . and denies [appellees'] claim."

4. "[Appellees] not recover actual damages or any other kind of damages or interest from [the Owenses] and [the Owenses] not recover actual damages or any other kinds of damages from [appellees]."

5. Neither party would be awarded attorney's fees but, in the event of an appeal, each party would recover appellate attorney's fees if successful.

The district court subsequently entered findings of fact and conclusions of law. Among other facts, the court found that appellees had proven statutory damages as to the Owenses' .23-acre lot of $6,000 and $99,000 as to the Owenses' .715-acre lot. *See* Tex. Prop. Code Ann. § 202.004(c) (West 2007) (providing that a court "may award civil damages for the violation of a restrictive covenant in an amount not to exceed $200 for each day of the violation"). It also found that the Wests had incurred loss of value to their property of $36,000 and that the Ouseys had incurred a loss of $60,000. However, the district court concluded that "[i]n accordance with the Court's discretion," appellees were "not entitled to recover damages" or interest.

The district court also found that appellees had incurred $14,024.70 in attorney's fees through trial, that the Owenses had incurred $20,000 in attorney's fees through trial, and that each party would incur $5,000 and $3,000 in attorney's fees on appeal to the court of appeals and the supreme court, respectively. The court concluded that "[i]n accordance with the Court's discretion," neither party was entitled to recover their attorney's fees through judgment, but each party could recover their appellate attorney's fees if successful.

## ANALYSIS

The Owenses bring eight issues on appeal. They do not challenge the judgment that they violated the restrictive covenants encumbering their .23-acre lot (where they initially placed the mobile home) but assert that the district court erred in rendering judgment that they violated restrictive covenants encumbering their .715-acre lot and in awarding mandatory injunctive relief. In their first issue, the Owenses argue that the restrictions encumbering their .715-acre lot expired by their terms in August 2001 and could not be "amended" or "extended" by appellees' actions over two years after that date. Similarly, the Owenses contend in their eighth issue that the district court erred in refusing to grant their request for a declaration that appellees' purported "amendment" or "extension" of the deed restrictions is void. In their second and seventh issues, the Owenses assert that appellees lack standing to enforce the restrictive covenants encumbering their .715-acre lot. The Owenses' remaining issues challenge the applicability of the implied negative restrictive easement theory on several grounds, including their contention that this theory cannot apply when, as here, the subject property is covered by express deed restrictions that had expired by their terms.

5

Appellees bring a cross-appeal asserting that the district court abused its discretion in denying their claims for statutory and common-law damages and attorney's fees. They also complain that the district court abused its discretion in awarding the Owenses conditional appellate attorney's fees.

**The Owenses' appeal**

### *Applicability of express deed restriction*

We consider first whether an express deed restriction applied to the Owenses' .715-acre lot. When construing restrictive covenants, we apply the general rules of contract construction. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). We examine the covenants as a whole in light of the circumstances present when the parties entered into the agreement. *Id.* Our primary concern is to ascertain and give effect to the true intention of the parties as expressed in the instrument. *See Gulf Ins. Co. v. Burns Motors*, 22 S.W.3d 417, 424 (Tex. 2000). Like other questions of law, we review a trial court's construction of restrictive covenants de novo. *Raman Chandler Props., L.C. v. Caldwell's Creek Homeowners Ass'n*, 178 S.W.3d 384, 390 (Tex. App.—Fort Worth 2005, pet. denied); *City of Pasadena v. Gennedy*, 125 S.W.3d 687, 692 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

The deed to the Owenses' .715-acre lot contains restrictive covenants prohibiting "noxious or other offensive activity," structures other than "one single family dwelling unit not to exceed two stories in height," any "mobile home, house trailer, tent, shack, garage or other out building [that] shall be used for residential purposes," or moving a dwelling situated outside the lot onto the lot or allowing it to remain there. It further provided that these restrictions:

shall be in full force and effect for a period of twenty-five years. However, any restrictive covenant or covenants may be renewed at the end of said 25 year period, or may, at any time, be altered, amended or cancelled by a majority vote of the owners of the property, each lot . . . having and being entitled to one vote, on any question of extension of said restrictions, and on any question of alteration, amendment of [sic] cancellation of any restriction.

The deed was executed on October 22, 1976. Under its terms, the restrictive covenants were to remain "in full force and effect for a period of 25 years," or only until October 22, 2001. Appellees contend that the "amendments" and "extension" of the deed restrictions that they voted to approve on October 22, 2003, and recorded on or about November 3—two years after the 25-year period had expired—made the restrictions effective through the relevant period. The Owenses contend that because the deed restrictions expired by their terms in October 2001, appellees necessarily could not have "extended" or "amended" the restrictions two years thereafter. Appellees point to the provisos that "any restrictive covenant or covenants may be renewed *at the end of said 25 year period*, or may, *at any time*, be altered, amended or cancelled." (Emphasis added.) They urge that these terms allow them to amend the restrictions "at any time," even two years after the "end of said 25 year period." We agree with the Owenses.

We must construe restrictive covenants as a whole, give effect to every sentence, clause, and word of a covenant, and avoid constructions that would render parts of the covenant superfluous or inoperative. *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 29 (Tex. 2003). Appellees' construction, while literally supported by the words "at any time" if read in isolation, is inconsistent with the deed restrictions as a whole and renders the explicit 25-year term

7

superfluous. Read in its proper context, the provision necessarily means that the restrictions may be amended "at any time" while they remain in effect. Similarly, the provision that the restrictions may be extended "*at* the end of said 25 year period" does not contemplate a time *two years after* the end of that period. (Emphasis added). The fact that the property code requires restrictive covenants to be "liberally construed," *see* Tex. Prop. Code Ann. § 202.003(a) (West 2007), does not change our analysis—even under a liberal construction, the plain language of the deed states that the restrictive covenants are in effect for a 25-year period.

For these reasons, we conclude that the express restrictive covenants in the deeds to the Owenses' .715-acre lot had expired long before October 2003, when the Owenses moved a mobile home onto the property, and that appellees' purported "extensions" and "amendments" to the restrictions were void and ineffective. We sustain the Owenses' first and eighth issues, and need not reach their second and seventh issues, which concern appellees' standing to enforce these restrictions.

### *Implied reciprocal negative easement*

In the alternative, appellees plead that even if the express deed restrictions had expired, the Owenses were still barred from placing a mobile home on their property under an implied reciprocal negative easement theory. An implied reciprocal negative easement may arise or operate when:

> an owner of real property subdivides it into lots and sells a substantial number of those lots with restrictive covenants designed to further the owner's general plan or scheme of development. The central issue is usually the existence of a general plan

of development. The lots retained by the owner, or lots sold by the owner from the development without express restrictions to a grantee with notice of the restrictions in the other deeds, are burdened with what is variously called an implied reciprocal negative easement, or an implied equitable servitude, or negative implied restrictive covenant, that they may not be used in violation of the restrictive covenants burdening the lots sold with the express restrictions.

*Evans v. Pollock*, 796 S.W.2d 465, 466 (Tex. 1990). The Owenses challenge the application of this principle on several grounds,[3] including that an implied reciprocal negative easement cannot arise where, as here, the subject property was sold with express restrictions that are the same as those allegedly implied. We agree with the Owenses.

As the supreme court observed in *Evans*, the implied reciprocal negative easement doctrine applies to enforce restrictions against lots "retained by the owner, or . . . *sold without express restrictions* to a grantee with notice of the restrictions in the other deeds." *Id.* (Emphasis added). The reason courts imply restrictions on these lots is to give effect to the general development scheme intended by the grantor. *Id.* But here, the deed to the Owenses' .715-acre lot contains *express* restrictions that reflect the grantor's intent. We conclude that no restrictions may be implied in the face of the express deed restrictions. We sustain the Owenses' third issue and need not reach their remaining issues.

---

[3] It is unclear whether the district court's judgment is also predicated on this theory. The court did not explicitly address this theory, although it made fact findings that appear possibly to address some but not all of its elements. To avoid deemed findings, the Owenses requested additional fact findings regarding each element, which the district court declined to make. However, because both parties briefed the issue, and because we ultimately conclude that the implied reciprocal easement theory cannot apply here, we proceed to address it.

In light of our disposition of the Owenses' issues, we must reverse the portions of the district court's judgment holding that the Owenses violated a restrictive covenant encumbering their .715-acre lot and granting injunctive relief compelling them to move the mobile home off this lot. The Owenses are also entitled to a declaration that appellees' post-expiration "extension" or "amendment" of the restrictive covenants applicable to the .715-acre lot is void.

As the Owenses are now the prevailing party on their declaratory judgment claim, we will remand the issue of their attorney's fees to afford the district court the opportunity to exercise its discretion to decide whether to award them. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1997); *McMillin v. State Farm Lloyds*, 180 S.W.3d 183, 211 (Tex. App.—Austin 2005, pet. denied).

**Appellees' Appeal**

*Damages*

In their first issue, appellees complain that the district court abused its discretion in refusing to award them statutory damages on their claims to enforce the restrictive covenants applicable to the Owenses' two lots. Section 202.004 of the property code authorizes trial courts to assess civil damages for the violation of a restrictive covenant for an amount up to $200 per day of violation. *See* Tex. Prop. Code. Ann. § 202.004(c). The district court found that appellees had proven statutory damages of $6,000 from the roughly one-month period in which the Owenses had placed the mobile home on their .23-acre lot, and $99,000 from the period after the Owenses moved the mobile home to their .715-acre lot. Section 202.004, however, states that the court "may" award

10

these damages, *see* Tex. Prop. Code. Ann. § 202.004(c), and the district court exercised its discretion not to award appellees any statutory damages.

Having held that the restrictive covenants in the deed to the Owenses' .715-acre lot were no longer in effect when they placed the mobile home on that property, we affirm the district court's judgment denying appellees statutory damages based on those acts. However, the Owenses have not challenged the district court's judgment that they violated the restrictive covenants on their .23-acre lot. The district court chose to exercise its discretion to deny appellees statutory damages for these violations in the context of rendering a judgment that granted appellees mandatory injunctive relief compelling them to remove the mobile home from their other lot. Now that we have reversed that injunction, we believe that the district court should have the opportunity to revisit how it should exercise its discretion in deciding whether to award appellees statutory damages for the Owenses' breach of the restrictive covenants on their .23-acre lot. Accordingly, we will remand this issue to the district court.

Appellees also complain that the district court abused its discretion in refusing to award them common-law damages for the Owenses' breaches of the restrictive covenants. As noted above, the district court found that appellees had incurred a total of $96,000 in common-law damages, the Wests incurring $36,000 and the Ouseys $60,000. It did not segregate these damages between the Owenses breaches of the restrictive covenants on their .23-acre lot versus their .715-acre lot.

For the same reasons that they were not entitled to injunctive relief, appellees were not entitled to damages resulting from the placement of the mobile home on the Owenses' .715-acre

11

lot. Further, we hold that they were not entitled to any common-law damages regarding either lot because we agree with the Owenses that there is no evidence to support such an award. The district court did not hear testimony regarding appellees' common-law damages. Instead, appellees' counsel sought to "expedite" proceedings by attempting to introduce their own discovery responses as proof of their common-law damages:

> We also pled for common law damages; that is, loss of market value. And I could have my clients testify to that. On the other hand, if [counsel for the Owenses] will permit it, I would simply have the answers to his interrogatories. I know this is a little irregular, but our answers to his requests for disclosure and—about damages and our answers to his requests for how we calculated damages, this is what my people would say if they were to come up here and testify about how they lost at market value. He may disagree with, you know, what our conclusions are, but I thought this might expedite matters because this is what I gave you.

Appellees' counsel presented two exhibits to the district court. The first was a document purporting to state amounts of statutory and common law damages. Under the heading "common law damages" the exhibit lists the Wests' decline in fair market value as $36,000 and the Ouseys' decline in fair market valued as $60,000. The second exhibit was an excerpt from the Ouseys' response to the Owenses' requests for disclosures concerning their amount and method of calculating damages. It stated the same common-law damages figures reflected in the first exhibit.

The Owenses objected to these exhibits as not probative, relevant or material evidence of common-law damages. The district court overruled the objections and admitted the exhibits. Absent any evidentiary foundation for the conclusions contained in these exhibits, we must agree with the Owenses that the exhibits provide no evidence of damages. Even if the exhibits were

12

properly admitted, they provide no evidence of damages. *See City of Harlingen v. Estate of Sharboneau,* 48 S.W.3d 177, 182-86 (Tex. 2001) (discussing methods for determining market value); *County of Bexar v. Cooper*, 351 S.W.2d 956, 958 (Tex. Civ. App.—San Antonio 1961, no writ) (holding that "[a] mere conclusion as to market value" is insufficient to show damages to land). Consequently, the district court did not abuse its discretion in its ultimate determination not to award appellees common-law damages.

### Appellees' attorney's fees

Appellees also contend that the district court abused its discretion in refusing to award the $14,024 that it found they had incurred in attorney's fees. Appellees rely on section 5.006 of the property code, which provides that a trial court "*shall* allow as to a prevailing party" who asserted an action based on breach of restrictive covenant "reasonable attorney's fees." Tex. Prop. Code Ann. § 5.006(a) (West 2003) (emphasis added). Appellees are no longer a prevailing party on their claims that the Owenses breached restrictive covenants encumbering their .715-acre lot. However, they remain a prevailing party on their claims concerning the Owenses' .23-acre lot. Accordingly, we remand to the district court to segregate and award the attorney's fees relating to this claim. *See Varner v. Cardenas*, No.06-0212, 2007 Tex. LEXIS 189, at *1 (Tex. Mar. 2, 2007); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006) (remanding because evidence of attorney's fees for entire case is some evidence of what amount of segregated fees should be).

### The Owenses' appellate attorney's fees

Finally, appellees contend that the district court erred as a matter of law in awarding the Owenses appellate attorney's fees conditioned on their success on appeal. They observe that

13

under the court's original judgment, the Owenses had no statutory or contractual basis for an attorney's fees award. The Owenses do not dispute this argument. We reverse this award but remand the issue to the district court for consideration alongside the Owenses' entitlement to attorney's fees under their declaratory judgment action.

## CONCLUSION

We reverse the portions of the district court's judgment holding that the Owenses' .715-acre lot was encumbered by restrictive covenants past August 2001, that they violated such restrictions by placing a mobile home on that lot, and enjoining them to remove the mobile home from that property. We render judgment declaring that appellees' 2003 post-expiration "extensions" or "amendments" to these deed restrictions are void and ineffective. To enable the district court to exercise its discretion in light of our ruling, we remand the issues of (1) whether the Owenses should be awarded attorney's fees under their declaratory judgment claim, including appellate attorney's fees, and (2) whether appellees should be awarded their statutory damages relating to the Owenses' breach of restrictive covenants encumbering their .23-acre lot. We affirm the district court's judgment denying appellees recovery of common-law damages.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed in part; Reversed and Rendered in part; Reversed and Remanded in part

Filed: June 8, 2007

14

